FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF PITTSBURGH, Wichita Federal Savings & Loan Association; City of Farmington, New Mexico; and Federal Savings and Loan Insurance Corporation, Plaintiffs,

v.

OPPENHEIM, APPEL, DIXON & CO., a partnership, Defendant.

OPPENHEIM, APPEL, DIXON & CO., a partnership, Third-Party Plaintiff,

v.

E. Keith OWENS; Robert Bell; S. Muir Atherton; Daniel Harkens; Richard Tisdale; John J. Giovannone; and Memel, Jacobs, Pierno, Gersh & Ellsworth, a partnership, Third-Party Defendants.

No. 85 Civ. 4163(MEL).

United States District Court,
S.D. New York.

May 8, 1986.

As Amended June 3, 1986.

Patterson, Belknap, Webb & Tyler, New York City, Rosenfeld, Parnell & Shames, Inc., Los Angeles, Cal., for Oppenheim, Appel, Dixon & Co.

Obermaier, Morvillo & Abramowitz, P.C., New York City (Robert G. Morvillo, Robert J. Anello, of counsel), Georgene Vairo, Associate Professor of Law, Fordham Law School, for third-party defendants John J. Giovannone, and Memel, Jacobs, Pierno, Gersh & Ellsworth.

LASKER, District Judge.

Memel, Jacobs, Pierno, Gersh & Ellsworth ("Memel Jacobs") and John J. Giovannone move pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), 12(b)(6), and 9(b) to dismiss the supplemental third-party complaint filed against them by Oppenheim, Appel, Dixon & Co. ("OAD") for lack of personal jurisdiction, improper venue, failure to state a claim upon which relief may be granted, and failure to plead fraud with particularity. The motion is granted in part and denied in part.

## I. Background

The third-party action as to which this motion has been made arises from the loss in June 1982 by several savings and loan associations and a municipality of $17 million in government securities as the result, *inter alia,* of the fraudulent conduct of a government securities dealer named Comark. In an earlier, related litigation, *Wichita Federal Savings and Loan Association v. Comark,* No. 82–4703(MEL) (S.D.N.Y.), a jury returned a verdict for fraud and the court directed a verdict for conversion against Comark. Marine Midland Bank, N.A. ("Marine"), Comark's clearing bank and a co-defendant, settled the claims against it in mid-trial.

In the present action, all but one of the *Wichita* plaintiffs or their successors in interest are suing OAD, Comark's accountants, on a variety of legal theories—including aiding and abetting violations of the federal securities laws by Comark—for the losses they sustained. OAD, in turn, has impleaded as third-party defendants[1] Comark's attorneys—the Memel Jacobs law firm and Giovannone, a partner in the firm—for recovery by way of contribution[2] in the event that the plaintiffs recover damages from OAD in this action.[3]

OAD's supplemental third-party complaint alleges that Giovannone, individually, as a "controlling person" of Comark under the federal securities laws, *see* 15 U.S.C. §§ 77o and 78t (1982), aided and abetted Comark in its violations of various provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 by:

(a) Knowingly representing to plaintiffs that the securities owned by plaintiffs in the possession of Comark would be and were being held in safekeeping by Comark;

(b) Depositing or causing to be deposited securities owned by and the property of plaintiffs in an unsegregated account at Comark's bank to be commingled with securities of Comark;

(c) Enabling and permitting Comark to use plaintiffs' said securities as collateral

---

**1.** OAD has also impleaded as third-party defendants the following individuals: E. Keith Owens, Robert Bell, S. Muir Atherton, Daniel Harkens, and Richard Tisdale. A separate third-party complaint filed by OAD against Marine was recently dismissed. *See First Federal Savings and Loan Association v. Oppenheim, Appel, Dixon & Co.,* 631 F.Supp. 1029 (S.D.N.Y.1986).

**2.** OAD's supplemental third-party complaint also asserts rights of indemnity as a basis for Memel Jacobs' potential liability to OAD. Supplemental Third-Party Complaint at ¶ 11. In its papers responding to Memel Jacobs' motion to dismiss, however, OAD fails to contest Memel Jacobs' position that there is no basis as a matter of law

upon which OAD may seek indemnification from it with respect to the federal securities claims in this case, *see* Memorandum of Law In Support of Memel Jacobs Motion to Dismiss at 44–45. Accordingly, OAD is assumed to have abandoned those claims, and Memel Jacobs' motion to dismiss is granted as to the federal securities indemnity claims.

**3.** For a more detailed statement of the background of this litigation, see the memorandum decision in *First Federal Savings and Loan Association v. Oppenheim, Appel, Dixon & Co.,* 629 F.Supp. 427 (S.D.N.Y.1986).

for loans made to Comark by Comark's bank, Marine Midland Bank, N.A. ("Marine");

(d) Failing to disclose to and warn plaintiffs of Comark's wrongful commingling and use of plaintiffs' securities; and

(e) Enabling and permitting Marine to seize and sell plaintiffs' securities notwithstanding that said ... defendant[ ] ... well knew that the said securities were the property of plaintiffs, were not the property of Comark, were not true collateral for the loans of Marine to Comark, and were not lawfully subject to seizure and sale by Marine to satisfy an indebtedness of Comark to Marine.

Supplemental Third-Party Complaint at ¶ 8. The supplemental third-party complaint goes on to allege that the Memel Jacobs law firm aided and abetted Comark in its violation of the federal securities laws:

(1) By advising and counseling Comark and its representatives that Comark could continue in its wrongful activities as more fully alleged in the complaint and that it was not necessary for Comark to make disclosure of the Comark commingling problem to any third persons (including plaintiffs);

(2) By stating and representing to OAD that OAD could and should continue to act as accountants for, and to render accounting services to, Comark; that the aforesaid acts and conduct of Comark did not constitute violations of the federal securities laws (including Section 10(b) of the 34 Act and Rule 10b–5 promulgated thereunder); and that OAD and Comark were not obligated to make disclosure of Comark's acts and conduct to any third persons (including plaintiffs); and

(3) By stating and representing to OAD that ... the acts and conduct of Comark did not constitute "a 10(b)(5) violation which would give the customers [of Comark] the right of rescission."

....

In doing the acts alleged [above], the Memel, Jacobs Law Firm: (i) owed a duty to OAD to fully and fairly disclose the existence and effect of Comark's violations of the 33 Act and the 34 Act; (ii) falsely represented that Comark's activities did not constitute violations of the 33 Act and the 34 Act; (iii) was aware that any advice from it to OAD which was other or different from that which is alleged ... above would cause OAD to discontinue rendering services to Comark, an event which the Memel, Jacobs Law Firm knew would have a material adverse effect on Comark; (iv) intended to prevent OAD's discontinuance of services to Comark by rendering the aforesaid advice to OAD; and (v) in order to prevent OAD's discontinuance of services to Comark, rendered its aforesaid advice to Comark and OAD knowing that it was wrong or in reckless disregard for the incorrect nature of its advice to Comark.

Supplemental Third-Party Complaint at ¶ 10(E), (G).

## II. Discussion

In moving to dismiss the claims asserted against them in OAD's supplemental third-party complaint, Memel Jacobs and Giovannone (collectively "Memel Jacobs")[4] proceed on the assumption that personal jurisdiction over them is founded upon Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa (1982),[5] since the com-

---

**4.** Although Giovannone and Memel Jacobs are named separately as third-party defendants, the arguments made to support dismissal of the complaint against them are assumed by the parties to be equally applicable to both, and we treat them as such.

**5.** Section 27 of the Securities Exchange Act of 1934 provides in pertinent part:

The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder. Any criminal proceeding may be brought in the

plaint alleges no independent basis for personal jurisdiction and asserts that Memel Jacobs is liable only for aiding and abetting Comark's violations of the federal securities laws. (OAD does not dispute this assumption and indeed argues that Section 27 provides *in personam* jurisdiction over Memel Jacobs while also contending—should Section 27 be found not to apply—that New York's long-arm statute provides jurisdiction over Memel Jacobs.)

Memel Jacobs therefore first contends that Section 27 cannot confer personal jurisdiction over Memel Jacobs because under the facts of this case, such an assertion of jurisdiction violates Memel Jacobs' constitutional due process rights. Second, Memel Jacobs argues that venue, and therefore jurisdiction, in the Southern District of New York is improper as to it under Section 27. Third, Memel Jacobs asserts that OAD has failed to state a claim against it for aiding and abetting Comark's violations of the federal securities laws—an assertion which if correct would not only require dismissal of the aiding and abetting claim but would remove the Section 27 basis for personal jurisdiction over Memel Jacobs.

## A. Personal Jurisdiction

Section 27 of the Securities Exchange Act has for some years been interpreted as providing nationwide personal jurisdiction over individuals alleged to have violated the Act. *See Mariash v. Morrill,* 496 F.2d 1138, 1142–43 (2d Cir.1974) ("It is simply too late in the day to argue that Section 27 does not authorize nationwide service of process...."). Although the Court of Appeals for the Second Circuit recognized in *Mariash* that the due process clause of the fifth amendment requires that the service authorized by Section 27 must provide a defendant with reasonable notice of the proceedings against him, *id.* at 1143, the court rejected the contention that due process requires that such a defendant have "minimum contacts" with the state in which the court exercising jurisdiction under the statute is located. Then Chief Judge Kaufman wrote in this regard:

> Mere statement of this contention reveals its fatal flaw: It is not the State of New York but the United States "which would exercise its jurisdiction over them [the defendants]." And plainly, where, as here, the defendants reside within the territorial boundaries of the United States, the "minimal contacts," required to justify the federal government's exercise of power over them, are present. Indeed, the "minimal contacts" principle does not, in our view, seem particularly relevant in evaluating the constitutionality of in personam jurisdiction based on nationwide, but *not* extraterritorial, service of process. It is only the latter, quite simply, which even raises a question of the forum's power to assert control over the defendant.

*Id.* (footnotes omitted); *accord Securities Investor Protection Corp. v. Vigman,* 764 F.2d 1309, 1313–16 (9th Cir.1985); *Johnson Creative Arts, Inc. v. Wool Masters, Inc.,* 743 F.2d 947, 950 & n. 3 (1st Cir.1984); *FTC v. Jim Walter Corp.,* 651 F.2d 251, 256–57 (5th Cir.1981); *Fitzsimmons v. Barton,* 589 F.2d 330, 333–34 (7th Cir. 1979).

In the face of this authority, Memel Jacobs contends that the idea that "minimum contacts" with the United States as a whole is sufficient in all cases to support jurisdiction is too simplistic and would jeopardize the constitutionality of Section 27. In support of its position, Memel Jacobs asserts that the post-*Mariash* case of *Insurance Corp. of Ireland v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), worked a fundamental change in personal jurisdic-

---

district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa (1982).

tion/due process analysis by rejecting the formalism of a sovereignty approach and focusing instead on a defendant's liberty interest. In *Bauxites* the Supreme Court held that the discovery sanction provisions of the Federal Rules of Civil Procedure could be applied to support a finding of *in personam* jurisdiction without violating due process where a defendant repeatedly refused to comply with court-ordered discovery of jurisdictional facts, thereby waiving any objection to personal jurisdiction. In explaining that the requirement of personal jurisdiction—like other individual rights—could be waived, Justice White wrote for the majority:

> The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty but as a matter of individual liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit ... not offend 'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940).

456 U.S. at 702–03, 102 S.Ct. at 2104–05.[6]

Memel Jacobs reasons from *Bauxites* (which did not involve a nationwide personal jurisdiction statute) that even where a statute such as Section 27 of the Securities Exchange Act provides for nationwide personal jurisdiction, the due process clause

requires a court to determine whether the assertion of jurisdiction over a defendant in a given federal forum—in this case, the Southern District of New York—accords with traditional notions of fairness. As a means of deciding whether it is constitutionally fair to subject Memel Jacobs to suit in this district, Memel Jacobs urges this court to adopt the analysis used by the district court in the same context in *GRM v. Equine Investment and Management Group*, 596 F.Supp. 307 (S.D.Tex.1984). In *GRM* Chief Judge Singleton considered five "non-sovereignty related" factors:

> (1) the burden imposed upon the defendants by [having to litigate in the forum], (2) defendants' reasonable expectations and the foreseeability of [having to litigate in the forum], (3) plaintiffs' interest in convenient and effective relief, (4) the federal judicial system's interest in effectively resolving controversies, and (5) [the forum's] interest in having a court in [that forum] adjudicate this dispute.

*Id.* at 315; *see also Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 203–04 (E.D.Pa.1974) (considering defendant's contacts with forum, inconvenience to defendant of litigating in forum, effect on judicial economy of dismissing defendant from suit, likely location of discovery proceedings, and impact of defendant's activities beyond his state of residence). Application of such a fairness test, Memel Jacobs contends, establishes that Section 27 cannot constitutionally be applied in this case to provide personal jurisdiction over Memel Jacobs in this district.

**6.** Justice White elaborated in a footnote:

> It is true that we have stated that the requirement of personal jurisdiction, as applied to state courts, reflects an element of federalism and the character of state sovereignty vis-a-vis other States.
> 
> ....
> 
> The restriction on state sovereign power described in *World-Wide Volkswagen Corp. [v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980) ], however, must be seen as ultimately a function of the individual liberty interest preserved by the Due Process Clause. That Clause is the only

> source of the personal jurisdiction requirement and the Clause itself makes no mention of federalism concerns. Furthermore, if the federalism concept operated as an independent restriction on the sovereign power of the court, it would not be possible to waive the personal jurisdiction requirement: Individual actions cannot change the powers of sovereignty, although the individual can subject himself to powers from which he may otherwise be protected.

> *Bauxites*, 456 U.S. at 702 n. 10, 102 S.Ct. at 2104 n. 10.

▆ Memel Jacobs appears to be correct that this case presents an issue of first impression in the Second Circuit in the sense that the Court of Appeals has not confronted the question of fifth amendment due process limitations on personal jurisdiction based on a nationwide service of process statute since the *Bauxites* decision.[7] The arguments Memel Jacobs makes in support of the application of a fairness test, however, are not a basis for abandoning the majority view espoused by Judge Kaufman in *Mariash* that "minimum contacts" limitations do not apply to *in personam* jurisdiction based on nationwide service of process under Section 27.

The answer to Memel Jacobs' argument is that the legal landscape of personal jurisdiction/due process analysis does not appear to have been fundamentally affected by *Bauxites*. To be sure, Justice White in *Bauxites*—with his eye on concepts of waiver and estoppel and his purpose to distinguish the institutional requirement of subject matter jurisdiction from the individual right to challenge personal jurisdiction—clarified the source of constitutional limits on personal jurisdiction: the liberty interest embodied in the due process clauses of the fifth and fourteenth amendments. However, nothing in his opinion suggests that Justice White intended any significant shift in the constitutional analysis, particularly in light of the fact that he had written only three years earlier:

Once it is determined that § 27 contemplates venue for Great Western's claim in the Northern District of Texas, the federal court in that District also had personal jurisdiction over the Idaho defendants, they having been served in a "district ... wher[e] ... found," there being no objection to the manner of service of process, and *there being no restrictions imposed by the Constitution on the exercise of jurisdiction by the United States over its residents*, see *Fitzsimmons v. Barton*, 589 F.2d 330

(CA7 1979). [footnote omitted] [emphasis added]

*Leroy v. Great Western United Corp.*, 443 U.S. 173, 191–92, 99 S.Ct. 2710, 2720–21, 61 L.Ed.2d 464 (1979) (White, J., joined by Brennan and Marshall, JJ., dissenting) (discussing personal jurisdiction question majority did not reach); *see also Stafford v. Briggs*, 444 U.S. 527, 554, 100 S.Ct. 774, 789, 63 L.Ed.2d 1 (1980) ("[D]ue process requires only certain minimum contacts between the defendant and the sovereign that has created the court.... The cases before us [basing jurisdiction on 28 U.S.C. § 1391(e), a nationwide service of process provision] involve suits against residents of the United States in the courts of the United States. No due process problem exists.") (Stewart, J., joined by Brennan, J., dissenting) (discussing personal jurisdiction question majority did not reach).

The Seventh Circuit Court of Appeals decision in *Fitzsimmons*, which Justice White cited in his *Leroy* dissent, quoted with approval the key passage in Judge Kaufman's *Mariash* opinion and specifically criticized the fairness test proposed in the *Oxford First* decision for blurring the lines between *forum non conveniens* and constitutional due process. The *Fitzsimmons* court stated:

We decline, however, to adopt these factors as a test of whether an instance of personal jurisdiction under Section 27 complies with the Due Process Clause. The "fairness" measured by these factors does not relate to the fairness of the exercise of power by a particular sovereign—the central concern of *Shaffer* [*v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)] and its predecessors—but instead to the fairness of imposing the burdens of litigation in a particular forum. As such, these factors are more appropriately used in applying 28 U.S.C. § 1404(a), which embodies the non-jurisdictional doctrine of *forum non conveniens*, and we therefore decline to import them into determination of the

---

7. At least two district judges have followed *Mariash* since *Bauxites*. *See Merrill Lynch, Pierce, Fenner & Smith v. Rajcher*, 609 F.Supp. 291, 293

(S.D.N.Y.1985); *Colavito v. Hockmeyer Equipment Corp.*, 605 F.Supp. 1482, 1485 (S.D.N.Y. 1985).

constitutionality of exercises of personal jurisdiction.

589 F.2d at 334 (footnote omitted).[8]

In sum, the existing legal authority does not support Memel Jacobs' theory of due process limits on nationwide personal jurisdiction under Section 27 of the Securities Exchange Act of 1934. Moreover, such a reading of *Bauxites*

> threatens to set district courts adrift when they embark upon that highly fact-bound analysis of whether asserting personal jurisdiction over a particular defendant joined by nationwide service of process satisfies the nebulous standard of "traditional notions of fair play and substantial justice."

**8.** It must be noted that one circuit court of appeals has expressed the view that the rationale, if not result, of cases adopting the *Mariash* theory may be affected by *Bauxites. See Burstein v. State Bar of California*, 693 F.2d 511, 515 n. 8 (5th Cir.1982) (questioning vitality of *FTC v. Jim Walter Corp.*, 651 F.2d 251 (5th Cir.1981)). On the other hand, the Supreme Court's most recent extended foray into the area of due process limitations on personal jurisdiction mentioned the *Bauxites* opinion in only two brief footnotes—hardly an indication that *Bauxites* marked a fundamental shift away from *International Shoe* and *World-Wide Volkswagen. See Burger King Corp. v. Rudzewicz*, —— U.S. ——, 105 S.Ct. 2174, 2182 nn. 13 & 14, 85 L.Ed.2d 528 (1985).

**9.** First, although the burden on Giovannone—the Memel Jacobs partner who would likely attend a trial in New York—of litigating this case at the other end of the country from his law practice would not be insubstantial, the trial of this action is expected to be tried for only four days a week and to take less than a month. Modern transportation and communication should permit Giovannone to keep in contact with Los Angeles and return to his affairs for several days each week. Moreover, most of the discovery involving Memel Jacobs has already taken place—virtually all of it in California—thus minimizing the inconvenience to the California defendant of litigating in New York. With regard to the foreseeability to Memel Jacobs of being brought into court in the Southern District of New York, it should suffice to point out that the firm served as outside general counsel to a securities dealer whose customers were located all over the United States and whose clearing bank was located in Manhattan, the nation's financial center. It is precisely because of the national character of the securities industry that Congress enacted Section 27. As for the federal system's interest in efficiently resolving

*GRM*, 596 F.Supp. at 315. Under Memel Jacobs' interpretation of *Bauxites*, due process analysis is cut loose from all notions of boundary, let alone sovereignty—reducing the "minimum contacts" touchstone of traditional fourteenth amendment scrutiny of personal jurisdiction to a sort of constitutionalized *forum non conveniens* factor balancing which we decline to adopt in this case.

■ Finally, even were the *GRM* five-factor fairness test to be applied in this case, personal jurisdiction over Memel Jacobs in this district would pass muster.[9]

For the reasons described above,[10] this court's assertion of jurisdiction over Memel

controversies, it must be noted that this is already the second trial arising out of the June 1982 losses—not to mention the related proceedings before the bankruptcy court in California. To dismiss Memel Jacobs from this suit would only require a third, later trial in another venue of the third-party claim, further taxing the federal court system and precipitating the piecemeal litigation of the contribution claims.

The remaining two factors are of somewhat less importance in this case. The Southern District of New York has little special interest in adjudicating this matter, though it is not clear what interest a federal district court could have unless it was sitting as a state court in a diversity of citizenship case. To the extent the interest of the state of New York need be considered, on the other hand, it might have an interest in permitting access to a court located in the state to third-party plaintiff OAD, an accounting partnership organized in the state of New York and having its principal place of business here. As to plaintiffs' interest in convenient and effective relief, dismissal of the third-party complaint against Memel Jacobs would leave the main plaintiffs unaffected. However, there is an equitable concern here that OAD should not be forced to litigate its contribution claims separately in California—having failed in its earlier efforts to have the case transferred to that forum. Under the *GRM* fairness test, therefore, personal jurisdiction over Memel Jacobs would be proper.

**10.** There may be additional reasons. A relatively recent article that championed the spirit of Memel Jacobs' argument on this motion and constructed a fairness test closely related to those derived by the *GRM* and *Oxford First* courts reached the conclusion that Section 27, among other federal statutes, was not constitutionally suspect:

> Because the venue provisions of most federal nationwide personal jurisdiction statutes

Jacobs in the Southern District of New York under Section 27 is not constitutionally defective. Because we conclude that personal jurisdiction is proper under Section 27, we do not reach the question of whether personal jurisdiction of Memel Jacobs is proper under New York's long-arm statute.

### B.   Venue

The propriety of venue is also governed by Section 27 of the Securities Exchange Act. Under Section 27, a suit to enforce any liability or duty under the Act may be brought either (1) "in the district wherein the defendant is found or is an inhabitant or transacts business," or (2) "in the district wherein any act or transaction constituting the violation occurred." 15 U.S.C. § 78aa; *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir.1985).

Memel Jacobs contends that venue—at least as to it—in this case does not lie in the Southern District of New York under either of the standards specified in Section 27. With respect to the second category, Memel Jacobs argues that it had nothing to do with any act committed in the district, that it did not aid and abet the only act related to Comark's fraud that did take place in the district—Comark's commingling of securities, and that in any event such commingling is not the act that gives rise to the allegations of liability against OAD in the main complaint. OAD responds first, that Memel Jacobs as a third-party defendant has no standing to challenge venue, and second, that venue in this district is proper on the merits since the commingling of securities was an "act or transaction" material to the fraudulent scheme perpetrated by Comark and aided and abetted by Memel Jacobs that occurred in this district.

OAD is correct in its statement of the long-standing general rule that a third-party defendant does not ordinarily have standing to object to venue. *See Morrell v. United Air Lines Transport Corp.*, 29 F.Supp. 757, 759 (S.D.N.Y.1939); *ABCKO v. Beverly Glen Music, Inc.*, 554 F.Supp. 410, 412–13 (S.D.N.Y.1983); 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1445 at 240–41 (1971); 3 J. Moore, *Federal Practice* ¶ 14.28[2] at 14–124 to 125 (2d ed. 1984). In this case, however, personal jurisdiction is founded upon a statutory provision that expressly limits its applicability to suits brought in certain fora. Because the venue requirements of Section 27 are inextricably intertwined with the statutory grant of personal jurisdiction, *see generally* Fullerton, *supra* note 10, at 71–76, it follows that proper venue is a prerequisite to valid *in personam* jurisdiction and any challenge to venue is in a sense a challenge to jurisdiction. *See, e.g., GRM*, 596 F.Supp. at 311 (venue considered as prerequisite to jurisdiction).[11] A third party always has standing to object to personal jurisdiction if the objection is timely raised.

It is necessary, then, to consider whether venue is proper as to Memel Jacobs in this district. OAD contends that under the standard adopted by the Second Circuit Court of Appeals in *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1347 (2d Cir.), *cert. denied*, 417 U.S. 932, 94 S.Ct. 2644, 41 L.Ed.2d 236 (1974), and in *Mariash*, 496 F.2d at 1143, it is sufficient

[specifically including Section 27] protect defendants from litigation in locations with which they have no meaningful connection, it will rarely be necessary for courts to undertake a due process analysis when challenges to personal jurisdiction are made in cases arising under the current statutes.
Fullerton, *Constitutional Limits on Nationwide Personal Jurisdiction in the Federal Courts*, 79 Nw.U.L.Rev. 1, 76 (1984).

11. Rejection of OAD's argument regarding standing to raise venue objections is not based in any way on the Supreme Court's decision in

*Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), upon which Memel Jacobs relies for its otherwise correct construction of Section 27: "No venue, no personal jurisdiction." Memel Jacobs' Reply Memorandum at 15. The Court in *Leroy* expressly avoided consideration of the personal jurisdiction issue so that it would not have to reach the question of whether the assertion of *in personam* jurisdiction under the Texas long-arm statute was constitutional. 443 U.S. at 181, 99 S.Ct. at 2715.

to establish venue under Section 27 that Comark's commingling of customer securities by the wrongful and fraudulent use of its account at Marine was an important step—occurring in this district—in the consummation of the fraudulent scheme alleged to involve Comark, OAD, Memel Jacobs, and others.

The standard adopted by the *Vesco* and *Mariash* courts was first articulated by the Court of Appeals for the Fifth Circuit in *Hooper v. Mountain States Securities Corp.*, 282 F.2d 195, 203–04 (5th Cir.1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961):

> The fraudulent scheme need not be hatched in the forum district. Nor is it necessary that a false or deceptive or fraudulent paper be sent or statement made through the use of the mails or interstate communications facilities....
>
> We think that any use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in the execution of the fraudulent, deceitful scheme or in its consummation is sufficient.
> ....
>
> It is apparent that the language in § 27 ... describing the venue district as "the district wherein any act or transaction constituting the violation occurred" cannot mean the district in which all acts took place, or in which the transaction as a whole was consummated. The statute was one designed to put an end to interstate frauds in the sale and trading of securities. The legislative pattern envisages the likelihood that actions would take place in many places requiring the frequent use of instrumentalities of the mail or of communication. The Act meant to vest jurisdiction in every district where any use of such instrumentalities of the mail or interstate commerce was of material importance to the consummation of the scheme.

*Id.* at 204–05. Under this standard any non-trivial act in the forum district which helps to accomplish a securities law violation is sufficient to establish venue. *See,* *e.g., id.* (telephone call made to forum district; use of communication facilities in forum to transfer funds); *Vesco,* 490 F.2d at 1347 (mailing of dividend from forum district by corporation's transfer agent); *Mariash,* 496 F.2d at 1144–45 (removal of restrictive legend from corporate shares by transfer agent located in forum district).

A corollary to the *Hooper* standard provides that in a multi-defendant securities case in which a common scheme of acts or transactions to violate the securities law is alleged, the occurrence in the district of "any act or transaction" by any defendant in furtherance of the scheme is sufficient to establish venue as to any other defendant who knowingly participated in the scheme—even if such defendant did not perform any independent venue-establishing act or transaction in the district. *See Wyndham Associates v. Bintliff,* 398 F.2d 614, 620 (2d Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968); *Hilgeman v. National Insurance Co. of America,* 547 F.2d 298, 302 & n. 12 (5th Cir.1977); *Vigman,* 764 F.2d at 1317–18; *Como v. Commerce Oil Co.,* 607 F.Supp. 335, 342 (S.D.N.Y.1985); *Greene v. Emersons, Ltd.,* 86 F.R.D. 47, 66 (S.D.N.Y.1980); *but see State Teachers Retirement Board v. Fluor Corp.,* 500 F.Supp. 278, 290 (S.D.N.Y.1980) ("rule is usually applied to cases in which either conspiracies are actually alleged or the other defendants are the intended beneficiaries of the act committed in the district"), *aff'd in part and rev'd in part on other grounds,* 654 F.2d 843 (2d Cir.1981).

In the instant case venue is proper under the broad venue provisions of Section 27 as liberally construed by the courts. It is not disputed that Comark made use of interstate communications facilities in connection with the commingling of customer securities in its account at Marine—a material part, if not the centerpiece, of its fraudulent scheme. Thus Comark itself and through its agent clearing bank committed "acts or transactions" which under Section 27 would establish venue in the Southern District of New

York of this multi-defendant securities action. Venue is then also established as to Memel Jacobs, as one of the other (third-party) defendants who is alleged to have participated knowingly in Comark's scheme as an aider and abettor.[12]

■ Accordingly, since venue is proper as to Memel Jacobs under Section 27, personal jurisdiction over it is both constitutional and within the compass of the statute.

### C. Failure to State A Claim

Memel Jacobs' final challenge to the supplemental third-party complaint is the dual argument that OAD has failed to state a claim for aiding and abetting Comark's violations of the securities laws and that OAD has not pleaded fraud with the particularity required by Fed.R.Civ.P. 9(b).[13]

■ The three prerequisites to aiding and abetting liability are: (1) the existence of a securities law violation by a primary wrongdoer; (2) knowledge of the violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. *ITT, An International Investment Trust v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980). Memel Jacobs does not dispute the presence of the first element in this case—Comark's securities fraud—and appears to concede, judging by the absence from its reply papers of any argument on the point, that OAD has properly pleaded the second element—Memel Jacobs' knowledge of Comark's fraud. Indeed, a reading

of the third-party complaint reveals that OAD directly alleges (not on information and belief) that OAD itself brought to Memel Jacobs' attention in 1981 Comark's commingling of customer securities, that OAD or Comark kept Memel Jacobs informed about the commingling problem, and that Memel Jacobs thus knew of Comark's wrongful acts. Supplemental Third-Party Complaint at ¶ 10(D), (E). The dispute thus is whether OAD has sufficiently pleaded the third element—substantial assistance in Comark's fraud—to withstand a motion to dismiss.[14]

OAD alleges in its third-party complaint on information and belief that Memel Jacobs substantially assisted Comark's fraud:

(1) By advising and counseling Comark and its representatives that Comark could continue in its wrongful activities as more fully alleged in the complaint and that it was not necessary for Comark to make disclosure of the Comark commingling problem to any third persons (including plaintiffs);

(2) By stating and representing to OAD that OAD could and should continue to act as accountants for, and to render accounting services to, Comark; that the aforesaid acts and conduct of Comark did not constitute violations of the federal securities laws (including Section 10(b) of the 34 Act and Rule 10b–5 promulgated thereunder); and that OAD and Comark were not obligated to make disclosure of Comark's acts and conduct to any third persons (including plaintiffs); and

---

12. Memel Jacobs' specific objections to venue can therefore be seen as missing the mark. For venue purposes, Memel Jacobs need not be actually involved in the material act or transaction occurring in the district and it need not aid and abet the act itself—mere participation in the overall fraudulent scheme suffices. And in this case, the act or transaction occurring in the district need not itself give rise to the allegations of liability by plaintiffs against OAD, since the supplemental third-party complaint charges Memel Jacobs with aiding and abetting *Comark's* violations of the securities laws.

13. The parties' arguments on this aspect of the motion to dismiss refer only to those claims in

the supplemental third-party complaint asserted against the Memel Jacobs law firm and not to those asserted against Giovannone individually.

14. OAD requests that Memel Jacobs' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) be treated as a motion for summary judgment. Such a conversion is unnecessary because the motion to dismiss can be decided on the pleadings alone. Therefore, no consideration has been given in deciding this motion to the allegations in OAD's motion papers about Memel Jacobs' dealings with the California Department of Corporations, since such allegations lie outside the pleadings.

(3) By stating and representing to OAD that ... the acts and conduct of Comark did not constitute "a 10(b)(5) violation which would give the customers [of Comark] the right of rescission." Supplemental Third-Party Complaint at ¶ 10(E).

Memel Jacobs contends that OAD's allegations of substantial assistance, even if taken as true, do not state a claim for relief because: (i) OAD alleges no more than that Memel Jacobs provided faulty legal advice, which is not actionable absent the existence of a duty owed by Memel Jacobs to the plaintiffs since—this being a contribution action—OAD is suing Memel Jacobs standing in the plaintiffs' shoes; (ii) Memel Jacobs' representations to OAD could not have been material to any actions taken by OAD since OAD retained its own lawyers; and (iii) where there is no fiduciary duty to disclose the fraud owed by the alleged aider and abettor to the victims, the assistance must be rendered with a high degree of scienter and a conscious, specific motivation in order to state a claim for aiding and abetting (citing *Quintel Corp. N.V. v. Citibank, N.A.*, 589 F.Supp. 1235, 1244–45 (S.D.N.Y.1984)).

▆ The response to Memel Jacobs' first point is that OAD is not alleging that Memel Jacobs was negligent in rendering legal advice or that it committed legal malpractice—claims which would survive a motion to dismiss only if it could be shown that Memel Jacobs owed a duty to plaintiffs in this action. Rather, OAD charges in its complaint that Memel Jacobs "knowingly and substantially assisted and aided and abetted Comark in violating" the securities laws. Supplemental Third-Party Complaint at ¶ 10(E). No duty to plaintiffs need be shown in order for OAD to make out such a claim.

▆ As to the materiality of Memel Jacobs' alleged representations to OAD—or, stated another way, whether as a matter of law OAD could have relied on Memel Jacobs' advice—we believe such representations can support a claim for aiding and abetting. Although OAD did retain its own counsel, it would not have been unrea-sonable for OAD to rely in part on the advice of other lawyers—especially where those other lawyers worked closely with Comark and had informed OAD by letter, *see* Supplemental Third-Party Complaint at ¶ 10(B), that they would monitor Comark's disclosure obligations. Such conduct by Memel Jacobs, taken together with the alleged knowing, wrongful advice to Comark, could have had the cumulative effect of helping to prevent plaintiffs and others from discovering Comark's fraud and thus of substantially assisting in the perpetuation of the fraud.

▆ Finally, Memel Jacobs' reliance on the *Quintel* decision is misplaced. *Quintel*, like the Court of Appeals decision in *ITT* which it followed, involved allegations of nothing more than failure to disclose. *See Quintel*, 589 F.Supp. at 1244 (third-party defendant " 'remained silent in order to aid, abet and assist ... the scheme to defraud [plaintiff]' ") (quoting third-party complaint). The approach which has been adopted by the Court of Appeals for this circuit for assessing aiding and abetting claims based on allegations of failure to disclose is:

> When it is impossible to find any duty of disclosure, an alleged aider-abettor should be found liable only if scienter of the high "conscious intent" variety can be proved. Where some special duty of disclosure exists, then liability should be possible with a lesser degree of scienter.

*ITT*, 619 F.2d at 925 (quoting *Woodward v. Metro Bank of Dallas*, 522 F.2d 84, 97 (5th Cir.1975)). The instant case involves more than allegations of failure to disclose, however. Memel Jacobs is alleged to have advised Comark and OAD that they could continue their respective activities even though it knew Comark's conduct was unlawful. Since affirmative action, and not mere inaction, is charged against Memel Jacobs, the "high conscious intent" standard is inapplicable. Moreover, it bears noting that the *Quintel* case, upon which Memel Jacobs relies so heavily, is distinguishable from this case not only because the alleged aider and abettor in *Quintel*

was alleged to have done no more than remain silent, but also because the court in *Quintel* found that the third-party complaint set forth no facts upon which to conclude that the third-party defendant was even aware of the fraud. 589 F.Supp. at 1245. Here, OAD has satisfactorily pleaded knowledge and affirmative acts on the part of Memel Jacobs.

Consequently, although OAD may have an uphill battle at trial proving the truth of these allegations and convincing a jury of Memel Jacobs' motives in participating in Comark's scheme, we cannot say at this juncture that OAD will be able to prove no set of facts in support of its claims which would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). Accepting OAD's pleadings as true, as required on a motion to dismiss, the supplemental third-party complaint sufficiently alleges substantial assistance to state a claim against Memel Jacobs for aiding and abetting Comark's securities fraud.

■ Memel Jacobs also contends that the supplemental third-party complaint is deficient because its allegations of substantial assistance violate "the general rule that Rule 9(b) pleadings cannot be based on information and belief." *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972). It is true that OAD's complaint introduces the allegations of substantial assistance in conclusory terms and on information and belief; however, this language is followed by a more specific description, quoted above, of the nature of the acts by Memel Jacobs that are alleged to constitute the substantial assistance. *See* Supplemental Third-Party Complaint at ¶ 10(E). Although OAD's description of Memel Jacobs' conduct is not particularly detailed, we believe it is an acceptable "statement of facts upon which the [pleading on information and] belief is founded," *River Plate Reinsurance Co. v. Jay-Mar Group, Ltd.,* 588 F.Supp. 23, 26 (S.D.N.Y.1984) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1298 at 416 (1969)), so as to render the pleading sufficient, at least as to matters particularly within Memel Jacobs' knowledge, such as its dealings with

Comark. *See Odette v. Shearson, Hammill & Co.,* 394 F.Supp. 946, 959–60 (S.D.N. Y.1975).

Although we are sensitive to the importance of protecting defendants from baseless charges of wrongdoing which can injure personal and professional reputations, the supplemental third-party complaint in our view pleads facts which give rise to an inference of fraud and states these facts with sufficient particularity to apprise Memel Jacobs of the misconduct complained of so as to enable it to prepare a defense. Dismissal on Rule 9(b) grounds is therefore not warranted.

\* \* \*

Accordingly, Memel Jacobs' motion to dismiss is granted as to OAD's federal securities law indemnity claims and denied in all other respects.

It is so ordered.