Louise **PRETE** and Paul **Prete**, Plaintiffs,

v.

John R. **LEPORE**, Jr., and Ultra Service, Inc., Defendants.

Civ. No. H–89–008 (AHN).

United States District Court, D. Connecticut.

April 18, 1989.

V. James Ferraro, New Haven, Conn., for defendants.

## MEMORANDUM AND ORDER

THOMAS P. SMITH, United States Magistrate.

In this action, plaintiffs seek to uphold the validity of two default judgments entered against the defendant John R. Lepore, Jr. ("Lepore").[1]  On May 26, 1988 the Superior Court of Arizona, Maricopa County, rendered judgment against Mr. Lepore on his failure to appear in an action brought by plaintiffs in connection with the purchase of various securities (hereinafter "the Arizona judgment").  On September 20, 1988, a default judgment was also entered in the United States District Court for the District of Arizona, upon failure to appear in a similar suit (hereinafter "the federal judgment").[2]  Defendant Lepore has now moved to dismiss the present action or for summary judgment on the grounds that the Arizona and federal judgments are void for lack of personal jurisdiction.[3]  His motion also requests that prejudgment attachments obtained by the plaintiffs on two properties which are the subject of other claims in the present action be vacated.  For all of the reasons that follow, the defendant's motion should be denied in all respects.

### I.

Both the Arizona litigation and the present action grew out of a series of investments undertaken by the plaintiffs from late 1985 to early 1987.  In December 1985, the plaintiffs allegedly purchased an interest in the Hambrose Leasing 1985–6 Limited Partnership ("Hambrose") based upon the recommendation of their nephew, defendant Lepore.  In November 1986, the

Robert J. Cathcart, Richard R. Steinmetz, Shipman and Goodwin, Hartford, Conn., for plaintiffs.

1. In various documents of record, the defendant is also referred to as "John R. Lepore."

2. Plaintiff has registered this judgment with the present court pursuant to 28 U.S.C. § 1963.  *See Prete v. Goldwater*, Misc.Civ. No. H–88–56 (AHN).

3. Although only Count One of the present complaint seeks judgment based on the Arizona judgment, and plaintiff is not *directly* seeking

enforcement of the federal judgment, Counts Two through Six allege that the defendant fraudulently conveyed property to the defendant Ultra Service, Inc. in order to hinder collection upon the latter.  The pending motion is therefore applicable to all of the counts of plaintiff's complaint, since Counts Two through Six bring into question the validity of the federal judgment.

plaintiffs allegedly requested the defendant's assistance in obtaining a similar tax shelter investment, and based on Mr. Lepore's suggestion, subsequently purchased units of the Middletown Nursery Limited Partnership ("Middletown"). With respect to both transactions, the defendant had initially contacted Mark Stepniewski,[4] a securities sales representative for Worldco Inc.,[5] concerning potential investment vehicles suitable for the plaintiffs; information concerning both the Hambrose and Middletown offerings originated with Mr. Stepniewski, who effectively concluded the sale of the securities to the Pretes.

The plaintiffs apparently became dissatisfied with their investments, since they initiated an action in Arizona Superior Court, in April 1987, claiming, among other things, that the sale of the Middletown limited partnership units violated the federal securities laws. *See* Defendant's Memorandum, Exhibit B (Arizona complaint). A similar action was filed in federal court in April 1988 with respect to the Hambrose investment. *See id.,* Exhibit C (federal complaint). Despite having been served with a summons and complaint in Hartford, Connecticut, for both the Arizona and federal suits, defendant Lepore failed to appear for either. As a result, a default judgment was subsequently entered against Mr. Lepore in both actions. These judgments allegedly remain in force and unsatisfied. Defendant Lepore has moved for dismissal or, in the alternative, for summary judgment in the present action based on the assertion that both the Arizona and federal default judgments are void for lack of personal jurisdiction.

## II.

### A.

■ The procedure for challenging the validity of a foreign judgment in a subsequent enforcement action is hardly a well-worn path. Although Rule 60(b)[6] has been interpreted as "leav[ing] undisturbed the right to make a collateral attack upon a … judgment in any proceeding wherein the validity of the judgment is appropriately challenged." *See* 7 J. Moore, *Federal Practice,* ¶ 60.41 2 (2d ed. 1988), the Federal Rules do not otherwise specify the particular method of mounting such an attack by motion. Further, although the means of obtaining relief from judgments delineated by Rule 60 are not expressly confined to federal judgments, there is no indication that they have been utilized to challenge state court judgments which form the basis of later federal actions. While there is also some authority suggesting that "the validity of a judgment cannot be questioned by a motion to dismiss," *see* 2A J. Moore, supra, ¶ 9.06, the better approach appears to be to permit challenges to foreign judgments pursuant to Rule 12(b)(2) when the basis for the challenge is that the rendering court lacked personal jurisdiction over the defendant. This should be the procedure particularly when the federal action merely seeks enforcement of a foreign default judgment after a failure to appear, and the *in personam* jurisdiction of the foreign court has not previously been litigated.

### B.

Ordinarily, when a Rule 12(b)(6) movant refers to facts or material outside of the pleadings the court is required to convert the motion into one for summary judgment. *See id.,* ¶ 12.07[2.–1]. The rule is necessarily different, however, under Rule 12(b)(2), since jurisdictional facts need not be included when pleading the existence of a prior judgment. *See* F.R.Civ.P. 9(e).

---

**4.** In various documents of record, Mr. Stepniewski is also referred to as "Mark Step."

**5.** Mr. Stepniewski is apparently also affiliated with organizations known as Investacorp, Inc., and the Todd Capital Corp. Purely for convenience, the "seller" of the securities at issue will be referred to as "Worldco."

**6.** Without specifying it as such, the defendant, in his memorandum, treats his motion with respect to the federal judgment as one under Rule 60(b)(6). However, since a judgment unsupported by personal jurisdiction is void, the defendant properly should have moved pursuant to Rule 60(b)(4). The motion will be considered as if the proper subsection had been relied upon.

Once a Rule 12(b)(2) motion to dismiss has been made, a district court has broad discretion in selecting the appropriate manner of proceeding. The motion may be decided on the basis of affidavits and the pleadings alone; it may order discovery; or it may conduct a preliminary hearing on the merits. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986); *Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58 (2d Cir.1981). In the absence of a hearing, a plaintiff need only make a *prima facie* showing that the rendering court had personal jurisdiction over the defendant in order to defeat the motion. *United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir.), *cert. denied*, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). However, if challenged, the party asserting jurisdiction would still be required to eventually prove jurisdiction at trial by a preponderance of the evidence. *Id.* at 242 n. 4; *see also Marine Midland Bank N.A. v. Miller*, 664 F.2d 899 (2d Cir.1981); 2A J. Moore, *Federal Practice*, ¶ 12.07[2.–2] n. 4 (2d ed. 1988).

### C.

With respect to the present case, the defendant argues that his contacts with the state and district of Arizona in connection with the plaintiff's investments were insufficient to permit *in personam* judgments to be rendered against him in those forums. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The parties are in agreement that defendant Lepore, a Connecticut resident, did not have any "face-to-face" meetings with the plaintiffs in Arizona concerning their investments in Middletown or Hambrose. Defendant's Statement of Facts, ¶ 9; Plaintiff's Response, ¶ 9. In his memorandum of law in support of his motion, defendant also admits to being directly and rather extensively involved in the Middletown transaction: at plaintiff's request he telephoned Mr. Stepniewski in New York City "on behalf of the plaintiffs" regarding the availability of suitable investments; he advised the Pretes as to the amount that should be invested; along with the plain-

tiffs, he reviewed the offering materials supplied by Stepniewski; and he later attempted to cancel the purchase, again at the Prete's request. *See* Defendant's Memorandum, at 3–6. As for the Hambrose transaction, the defendant avers that his role was substantially the same; he isolated a potential investment, referred the Pretes to Stepniewski, and subsequently acted as a conduit through which information was passed to the plaintiffs and the plaintiffs communicated with Mr. Stepniewski. The defendant pointedly omits having ever telephoned the Prete's residence in Arizona, or mailing correspondence to them at that location.

The plaintiffs, of course, allege that Mr. Lepore's involvement in these transactions was much more extensive. In their memorandum of law opposing the motion, plaintiffs assert that the defendant telephoned them several times, in Arizona, in connection with the investments; that he served not only as a conduit for information, but also for payments made to Worldco during the purchase of the Hambrose interests; that Mr. Lepore completed certain forms and signed certain documents in lieu of the Prete's signatures, also in connection with Hambrose; and, perhaps most significantly, that Mr. Lepore performed certain "due diligence services" in Phoenix, Arizona, on behalf of Mr. Stepniewski relating to both the Hambrose and Middletown transactions. *See* Plaintiff's Memorandum, at 1–8. As evidence of these services, plaintiff has submitted copies of bills, listing meetings in Phoenix and elsewhere, that Mr. Lepore presented to Mr. Stepniewski following the sale of the partnership units. *See id.* Exhibits B and L.

### D.

It is undisputed that the defendant was properly served in Hartford, Connecticut, with a summons and complaint in the Arizona state court action, pursuant to Arizona's "long-arm" statute, 16 Ariz.Rev. Stat.Ann., Rules of Civ.P. 4(e)(2). In part, Rule 4(e)(2) authorizes the extraterritorial service of process when the defendant "caus[es] an event to occur in this state out

of which the claim which is the subject of the complaint arose ..." The reach of the statute is intended to be coextensive with the due process requirements of the Constitution. *Batton v. Tennessee Mut. Ins. Co.,* 153 Ariz. 268, 736 P.2d 2 (Ariz.1987); *Powder Horn Nursery, Inc. v. Soil & Plant Laboratory, Inc.,* 20 Ariz.App. 517, 514 P.2d 270, 272 (1973). To determine whether, in each case, an Arizona state court may exercise *in personam* jurisdiction over a nonresident defendant therefore requires an examination of the defendant's contacts within the state. *See Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1031–32, 94 L.Ed.2d 92 (1987); *Aries v. Palmer Johnson, Inc.,* 153 Ariz. 250, 735 P.2d 1373 (Ariz.Ct.App.1987).

It should be borne in mind that due process does not require the defendant to have been physically present within the forum state before personal jurisdiction can be exercised. *O'Connor, Cavanagh, Anderson, Westover, Killingworth and Beshears, P.A. v. Bonus Utah, Inc.,* 156 Ariz. 171, 173, 750 P.2d 1374, 1376 (Ariz.Ct. App.1988). Nor must the defendant engage in any activity which occurs within the forum; it is sufficient that he has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Aries,* 153 Ariz. at 255, 735 P.2d at 1378 (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984)); *see also Executive Properties, Inc. v. Sherman,* 223 F.Supp. 1011, 1016 (D.Ariz.1963).

With respect to the Arizona judgment, the pleadings, affidavits, and other materials of record amply indicate that plaintiffs have satisfied their burden of showing *prima facie* that personal jurisdiction existed over the defendant. Mr. Lepore's activities in connection with the Middletown transaction appear to have been purposefully directed towards the consummation of the Prete's investment. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958); *Sullivan v. Metro Prods., Inc.,* 150 Ariz. 573, 577, 724 P.2d 1242, 1246, *cert. denied,* 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 185 (1986). He was clearly an active, rather than passive participant in causing the plaintiffs to enter into a contract for the purchase of the partnership interests, *see Bonus Utah,* 156 Ariz. at 173, 750 P.2d at 1376, an event which, according to the terms of the Middletown Subscription Agreement, took place in Arizona. *See* Plaintiff's Memorandum, Exhibit A, ¶ 2(K).

It should be emphasized once again that plaintiffs are not relieved of the burden of establishing personal jurisdiction in the Arizona action by the preponderance of the evidence at trial, if that jurisdiction is brought into question. Since the plaintiffs have made a *prima facie* showing that the defendant was properly brought within the ambit of Arizona's "long-arm" statute, and that his contacts with that state were sufficient to permit the exercise of *in personam* jurisdiction, the defendant's Rule 12(b) motion to dismiss based on lack of jurisdiction should therefore be denied.

### III.

■ The federal default judgment rendered against Mr. Lepore warrants a different analysis. The federal action involved the alleged violation of sections 12 and 17 of the Securities Act of 1933 ("the 1933 Act") 15 U.S.C. §§ 77*l*, 77q, and Section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78j, and also contained various state statutory and common law claims. The defendant was served with a summons and complaint pursuant to 15 U.S.C. §§ 77v and 78aa, which authorize nation-wide service-of-process when violations of the federal securities laws are alleged.

Although there appears to be something less than complete agreement on this issue, the provisions authorizing nationwide service of process have also been interpreted as providing nationwide personal jurisdiction over individuals alleged to have violated the 1933 and 1934 Acts. *Compare Keene Corp. v. Weber,* 394 F.Supp. 787 (S.D.N.Y.1975) (no *in personam* jurisdiction where defendant took no active part in

577

merger negotiations) *with First Fed. Savings and Loan Assoc. v. Oppenheim, Appel, Dixon and Co.,* 634 F.Supp. 1341, 1345 (S.D.N.Y.1986) (nationwide personal jurisdiction). The Second Circuit Court of Appeals has expressly rejected the argument that a defendant must display some "contacts" with the forum district before personal jurisdiction can be exercised:

> It is not the [forum] State[ ] but the United States which would exercise its jurisdiction over [the defendant]. And plainly where ... the defendants reside within the territorial boundaries of the United States, the 'minimal contacts' required to justify the federal government's exercise of power over them, are present.

*Mariash v. Morrill,* 496 F.2d 1138, 1143 (2d Cir.1974) (footnotes omitted).

As the late Judge Blumenfeld wrote, with typical succinctness:

> In determining whether jurisdiction exists under [15 U.S.C. § 78aa] analysis under the standards of a state statute or under *International Shoe v. Washington* and its progeny are irrelevant.

*Clute v. Davenport Co.,* 584 F.Supp. 1562, 1580–81 (D.Conn.1984). Judge Blumenfeld went on to state, however, that

> plaintiffs need only show that [the defendant] participated in some manner in a scheme which resulted in a violitive act or transaction occurring in [the forum district].

*Id.* at 1584. This comment suggests the "twist" that §§ 77v and 78aa place on jurisdictional questions: while there is no requirement that a defendant have had any contacts with the forum district in order for there to be *in personam* jurisdiction, "contacts" of a nature similar to those required by due process are necessary to establish that *venue* has been properly laid. In part, Section 77v(a) permits actions to be brought in any district where the defendant "transacts business," or where "the offer or sale took place." Section 78aa similarly authorizes actions to be brought in any district where the defendant "transacts business." In applying these provisions, courts have borrowed the "minimum

contacts" due process approach in determining the threshold amount of within-forum activity that may be considered "transacting business." In *Mariash,* the Second Circuit adopted the standard first articulated in *Hooper v. Mountain State Securities Corp.,* 282 F.2d 195, 204–05 (5th Cir. 1960), *cert. denied,* 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961):

> '[A]ny use of instrumentalities of the mails or other interstate facilities made within the forum district constituting an important step in ... [the] consummation [of the fraudulent scheme] is sufficient' for venue to lie in that district.

*Mariash,* 496 F.2d at 1144 (quoting *Hooper,* 282 F.2d at 204–05). Proper venue has consequently been found to have been established by reason of the defendants' mailing of incomplete and misleading proxy statements to debenture holders residing in the forum, *Savin v. CSX Corp.,* 657 F.Supp. 1210, 1215 (S.D.N.Y.1987), and by the mailing of dividends from the forum district, *International Controls Corp. v. Vesco,* 490 F.2d 1334, 1347 (2d Cir.1974).

The difficulty in the present case is that the defendant Lepore has failed to discuss venue in connection with his motion to dismiss or for summary judgment. He has argued exclusively that the federal default judgment is void for lack of personal jurisdiction. Treating this as a Rule 60(b)(4) motion, however, it is clear that, for the reasons stated earlier, the Arizona district court had *in personam* jurisdiction over Mr. Lepore by virtue of the nationwide service of process provisions appurtenant to the 1933 and 1934 Acts. The federal judgment cannot, therefore, be found void due to lack of personal jurisdiction.

■ Rule 60(b)(4) also cannot be used to challenge the validity of a judgment on the grounds that the rendering court was an improper venue for the reason that improper venue alone does not render a judgment void. The distinction between venue and jurisdiction in this context is quite straightforward: when a court lacks either subject-matter or personal jurisdiction, any judgment it renders is void *from its inception.* A movant under Rule 60(b)(4) is not seek-

ing to have an otherwise valid judgment declared void, but is merely asking for recognition of the fact that the previous judgment is a legal nullity. Venue, on the other hand, is simply a privilege extended to each defendant, and is deemed to be waived unless a timely objection is interposed. 1 J. Moore, *Federal Practice*, ¶ 0.146[6] (2d ed. 1988). Defendant Lepore did not question venue during the pendency of the federal action and, indeed, has yet to interpose any objection to venue being laid in the district of Arizona. Accordingly, there is no basis for finding that the federal default judgment is void or that the portions of the action *sub judice* that relate to that judgment should be dismissed. The defendant's motion should therefore be denied.[7]

### IV.

■ Counts Two through Six of the present complaint involve the allegedly fraudulent conveyance of real property from defendant Lepore to the corporate defendant, Ultra Service, Inc. Pursuant to Federal Rule 64 and Conn.Gen.Stat. § 52–278c(a)(1), plaintiff's application for a prejudgment attachment on the two properties was granted on the basis of a finding of probable cause supporting the plaintiff's claims. *See* Order (Jan. 6, 1989). Defendant Lepore has now moved to vacate the attachments on the grounds that there is "sufficient doubt" that plaintiffs will be able to establish that the conveyance were made with a fraudulent intent as required by Conn.Gen.Stat. § 52–552.

A prejudgment remedy may be obtained when the plaintiff establishes that there is probable cause to sustain the validity of his claims. The plaintiff need not demonstrate, by a preponderance of evidence or otherwise, that he will prevail. *Dow & Condon, Inc. v. Anderson*, 203 Conn. 475, 525 A.2d 935 (1987). Contrary to defendant's assertions, the affidavit submitted in support of his motion does not cast "suffi-

cient doubt" on the *validity* of plaintiff's claims to impugn the prejudgment attachment. However, since a defendant will ordinarily move pursuant to Conn.Gen.Stat. § 52–278e for a hearing to vacate a prejudgment remedy, and since the defendant has called into question an affidavit submitted by plaintiffs in support of the attachment, the pending motion should be denied without prejudice to the defendant's filing a timely motion for a hearing in strict accordance with the above-referenced statute.

### V.

For all of the foregoing reasons, the defendant's motion to dismiss or for summary judgment is denied in all respects. The motion to vacate the prejudgment attachment is denied without prejudice to to the filing of a renewed motion to vacate and a request for a hearing as contemplated by Conn.Gen.Stat. § 52–278e.

---

7. Defendant Lepore is similarly not entitled to summary judgment at the present time. As the foregoing makes clear, there are still genuine issues of material fact regarding the nature and extent of Mr. Lepore's involvement in the partnership transactions. Until these are conclu-

sively resolved, the court cannot find, as a matter of law, that the judgments at issue were placed on an unsound jurisdictional foundation. Accordingly, defendant's motion for summary judgment should also be denied.