**Steven D. EADS, Appellant,**

v.

**WOODMEN OF THE WORLD LIFE INSURANCE SOCIETY, Appellee.**

**No. 70627.**

Court of Appeals of Oklahoma,
Division No. 2.

March 28, 1989.

Rehearing Denied April 24, 1989.

Certiorari Denied Jan. 9, 1990.

Jim Brent Smalling, Chickasha, for appellant.

Rodney C. Ramsey, Stewart & Elder, Oklahoma City, for appellee.

MEANS, Judge.

Plaintiff appeals from the order of the trial court which dismissed his lawsuit because of improper venue. Having reviewed the record and applicable law, we reverse and remand.

Plaintiff was employed as a field representative for Defendant Woodmen of the World Life Insurance Society in September 1984. Pursuant to his employment, he signed a written contract with Defendant. On April 3, 1986, he signed a second contract virtually identical to the first employment contract. Eads signed a third employment contract with Defendant, effective July 1, 1986, in which the following provision appears:

12. VENUE AND CONSTRUCTION

The Society and Field Representative agree that this contract is to be construed according to the laws of the State of Nebraska and that the exclusive venue for the pursuit of any legal proceeding or remedy arising out of this contract shall be in Douglas County, Nebraska.

In August 1986, Eads became involved in a dispute with Defendant over the proceeds of a life insurance policy in which he was the named beneficiary. The named insured was Eads' brother-in-law, Robert Murphy. In January 1987, Defendant denied Eads' claim for benefits under the policy, asserting that Murphy's death was suicide. In May 1987, Eads filed a lawsuit against Defendant for breach of the life insurance contract.[1]

In June 1987, Defendant terminated Eads' employment as its field representative. Subsequently, in August 1987, Eads filed the lawsuit involved in this appeal. In his petition Eads asserted that Defendant had "arbitrarily, capriciously, in bad faith and without just cause terminated [his] employment." He contended that the termination was in violation of both his written contract and public policy of the State of Oklahoma. He sought actual damages for loss of income, including loss of renewals, and also sought punitive damages.

Defendant filed a motion to dismiss pursuant to 12 O.S.Supp.1988 § 2012(B). In its motion and accompanying brief, Defendant set out the venue provision from Eads' employment contract, contending that Eads "contracted and agreed that the sole and exclusive venue for the pursuit of any legal proceeding or remedy arising out of the subject agreement would be Douglas County, Nebraska."

Eads' response to the motion asserted that the Oklahoma courts had jurisdiction over Defendant because of its activities in the state. An accompanying affidavit stated that "when the contract was signed, there were no negotiations or discussions" concerning lawsuits and that the "contract was prepared by defendant company and they had me sign it in order to obtain a job." He further contended that he was without a job and had no funds to pursue his cause of action in Nebraska. He pointed out that his first two contracts contained no venue provision, but that only three months after he had signed his second employment contract, he was forced to sign the third one with the venue provision "under the threat that if I did not sign, I would not have a job."

In spite of these assertions, the trial court sustained Defendant's motion to dismiss. The court specifically found "that the parties had previously entered into a contractual agreement that the contract was to be construed according to the laws of the state of Nebraska, and that the exclusive venue for the pursuit of any legal proceeding or remedy arising out of that contract should be Douglas County, Nebraska." Eads has appealed.

On appeal, both parties agree that the Oklahoma Supreme Court has never ruled on the validity of forum selection clauses. Eads argues that the choice of venue provision is against public policy. Defendant contends otherwise and argues that the provision must be given force and effect when contained in a valid contract. In presenting their arguments, however, both

---

1. An appeal in this previous suit was resolved adversely to Eads in *Eads v. Woodmen of the*

*World Life Insurance Society,* No. 70,401 (Okla. Ct.App. March 21, 1989).

parties misperceive the effect of forum selection clauses in general.

Choice of forum contract clauses "ordinarily cannot oust a state of jurisdiction to resolve a dispute properly presented to it." *Exum v. Vantage Press, Inc.,* 17 Wash. App. 477, 478, 563 P.2d 1314, 1315 (1977). As stated in *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341, 345 (3d Cir.1966):

> [S]uch a provision does not oust the jurisdiction of the courts; in effect it merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction. There will always be open to either party the opportunity to present whatever evidence will move a court in the particular circumstances not to decline to exercise its undoubted jurisdiction.

A similar statement is found in the *Restatement (Second) of Conflicts* § 80 (1971): "The parties' agreement as to the place of the action cannot oust a state of judicial jurisdiction, but such an agreement will be given effect unless it is unfair or unreasonable." Comment a to section 80, states: "Private individuals have no power to alter the rules of judicial jurisdiction."

Relying in part on the *Restatement,* the Supreme Court sustained a contractual choice of forum in an international contract between a German and American corporation in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *The Bremen,* the Court upheld the contractual choice because it was "a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power." *Id.* at 12, 92 S.Ct. at 1914 (footnote omitted). The Court characterized the contract as "a far from routine transaction" between experienced businessmen and found no compelling or countervailing reasons why the choice of forum should not be honored. *Id.* at 13, 92 S.Ct. at 1914–15. In its holding the Court stated the party resisting the forum selection must "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Id.* at 15, 92 S.Ct. at 1916.

Historically, forum selection clauses which purported to exclude jurisdiction of certain courts have not always been well received. *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.,* 739 F.2d 4, 6 (1st Cir.1984). As the law evolved, American courts changed the way in which they viewed forum selection clauses. *See, e.g., Reeves v. Chem Industrial Co.,* 262 Or. 95, 495 P.2d 729 (1972) (in banc) (tracing historical development of. contractual forum clauses). *See also* Annotation, "Validity of Contractual Provision Limiting Place or Court in Which Action May be Brought," 31 A.L.R. 4th 404 (1984). In spite of modern trends, many courts still adhere to the common law rule that forum selection clauses are per se invalid on the grounds that "[p]arties may not confer jurisdiction by consent, nor may they limit the jurisdiction of a court by consent." *Redwing Carriers, Inc. v. Foster,* 382 So.2d 554, 556 (Ala.1980). Other courts refuse to validate forum selection clauses, stating: "[A] provision of a contract fixing the venue of an action on the contract as to future litigation is void as contrary to public policy." *Cartridge Rental Network v. Video Entertainment, Inc.,* 132 Ga.App. 748, 748, 209 S.E.2d 132, 133 (1974). *See also, Fidelity Union Life Insurance Co. v. Evans,* 477 S.W.2d 535, 537 (Tex.1972). Finally, even those jurisdictions which have allowed such clauses to be enforced have stated: "[W]e hold that clauses purporting to deprive Iowa courts of jurisdiction they would otherwise have are not legally binding in Iowa." *Davenport Machine & Foundry Co. v. Adolph Coors Co.,* 314 N.W.2d 432, 437 (Iowa 1982).

■ However, the current status of the law reveals that the majority of modern jurisdictions follow the rule that "[f]orum selection clauses are *prima facie* valid and should be enforced unless they can be shown to be unreasonable under the circumstances of the case." *Furry v. First National Monetary Corp.,* 602 F.Supp. 6, 8 (W.D.Okla.1984). Although it is true "that the parties may not *deprive* courts of their

jurisdiction over causes by private agreement ... courts possess discretion to *decline* to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum." *Smith, Valentino & Smith, Inc. v. Superior Court,* 17 Cal.3d 491, 495, 551 P.2d 1206, 1209, 131 Cal.Rptr. 374, 377 (1976) (in bank). Thus, a court in its discretion may refuse to exercise jurisdiction by necessarily respecting the intent of the contracting parties. *Crowson v. Sealaska Corp.,* 705 P.2d 905, 911 (Alaska 1985).

"[T]he recent and favored trend is to apply a 'reasonableness' test in determining whether to enforce such a clause." *Volkswagenwerk, A.G. v. Klippan, GmbH,* 611 P.2d 498, 503 (Alaska 1980), *cert. denied,* 449 U.S. 974, 101 S.Ct. 385, 66 L.Ed.2d 236 (1980). The standard of "unfair or unreasonable" is "designed to invalidate clauses" of forum selection which were never negotiated or discussed by the parties. *Colonial Leasing Co. v. Pugh Bros. Garage,* 735 F.2d 380, 382 (9th Cir. 1984). As the *Restatement* comments: "Such a provision, however, will be disregarded if it is the result of overreaching or of the unfair use of unequal bargaining power or if the forum chosen by the parties would be a seriously inconvenient one for the trial of the particlar [*sic*] action." Section 80 at comment a. Hence, the *Colonial Leasing* court refused to abide by a choice of forum provision because it was contained in a form contract and "there was in fact no bargaining on the clause in question." 735 F.2d at 382. Although a form contract "does not automatically amount to the overreaching proscribed by *The Bremen,*" it may be evidence of unfair advantage of one party over the other. *Janko v. Outboard Marine Corp.,* 605 F.Supp. 51, 52 (W.D.Okla.1985).

█ Similarly, Oklahoma courts will refuse to enforce a contract where there is "an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party." *Barnes v. Helfenbein,* 548 P.2d 1014, 1020 (Okla. 1976) (footnote omitted). In the instant case, Eads' affidavit asserts that no bargaining or negotiating occurred concerning the choice of forum provision. Furthermore, the provision is included in a form contract which Eads argues he was forced to sign in order to retain his job as a field representative. Rather than voluntary negotiation at arm's length, Eads was given no "meaningful choice" concerning the forum selection clause which is "unreasonably favorable" to Defendant. Eads has shown that the forum selection clause was the result of unequal or unfair bargaining power. The clause was not "fairly bargained for" as the one upheld in *Societe Jean Nicolas et Fils v. Mousseux,* 123 Ariz. 59, 61, 597 P.2d 541, 543 (1979). Thus, there is no compelling reason to enforce the forum selection provision.

Furthermore, the party seeking to avoid the contract provision should be able "to show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *The Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917. Eads has argued that it will be so inconvenient for him to litigate in Nebraska that the clause should be found unreasonable. *See, ABC Mobile Systems, Inc. v. Harvey,* 701 P.2d 137, 139–40 (Colo.Ct.App.1985). Finally, he has alleged that he will be deprived of his right to bring an action for wrongful discharge or wrongful termination if required to litigate in Nebraska courts.

Moreover, the trial court's decision to decline to exercise jurisdiction and dismiss the lawsuit appears in opposition to the public policy of this state. Our state constitution requires that the courts "shall be open to every person" and that speedy and certain remedies are "afforded for every wrong and for every injury to person, property, or reputation." Okla. Const. art 2, § 6. It is the policy of the law in this state to afford every party "a fair opportunity to present his side of a cause." *Railway Express Agency, Inc. v. Jansen,* 351 P.2d 1071, 1072 (Okla.1960). Our courts have acknowledged a policy favoring access to Oklahoma courts by resident plaintiffs. *Yery v. Yery,* 629 P.2d 357, 361 (Okla. 1981).

In the instant case, the trial court clearly has personal jurisdiction and subject matter jurisdiction. Eads is an Oklahoma resident, and Defendant is registered with the State Insurance Commission and unquestionably doing business within the State of Oklahoma. While we hold that forum selection clauses are not per se invalid, we find that enforcement of the forum selection in the instant case is both unfair and unreasonable. The trial court abused its discretion in declining jurisdiction. The order dismissing Eads' petition is reversed and the case is remanded for further proceedings.

REIF, P.J., and STUBBLEFIELD, J., concur.