2011 OK CIV APP 85

The **HOWARD FAMILY CHARITABLE FOUNDATION, INC.; Howard Investments, LLC; Robert E. Howard, II, an Individual; Marilyn Patricia Kelly, an Individual; Scott and Carlita Beauvais, Husband and Wife; Greg and Jill Castro, Husband and Wife; Jimmie M. Richardson, an Individual; Dennis Davis, an Individual; Don Koebelin, an Individual; Chris Fleming, an Individual; David Shear, an Individual; Brian Lorentz, an Individual; Gead Investments, LLC; David Hudiburg and Steve Hudiburg, as Trustees of the Paul Hudiburg 1997 Dynasty Trust; Steve Hudiburg, an Individual; Harry Patterson, an Individual; Bobby Masterson, an Individual; Hal Steinke, an Individual; Metropolitan Auto Dealers Association, a Trade Group; Peter and Crystal Hodges, Husband and Wife; Aaron London, an Individual; and Ken Wilkins, an Individual, Plaintiffs/Appellants,**

v.

Mark S. **TRIMBLE, Individually; Phidippides Capital Management, LLC; MF Global, Inc.; and Archway Technology Partners, L.L.C., Defendants/Appellees.**

No. 107,796.

Court of Civil Appeals of Oklahoma, Division No. 1.

Jan. 28, 2011.

Rehearing Denied March 4, 2011.

Certiorari Denied June 27, 2011.

---

Joseph H. Bocock, Spencer F. Smith, Kristin M. Simpsen, McAfee & Taft, Oklahoma City, Oklahoma, and Kurtis J. Ward, Law Offices of Kurtis J. Ward, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Jon Epstein, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Oklahoma City, Oklahoma, and Heather L. Cupp, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, Oklahoma, and Anthony L. Paccione, Matthew D. Parrott, Katten, Muchin, Rosenman, LLP, New York, New York, for Defendant/Appellee, MF Global, Inc.

Matthew C. Kane, Keith J. Klein, Grant M. Lucky, Ryan, Whaley, Coldiron, Shandy, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee, Archway Technology Partners, LLC.

WM. C. HETHERINGTON, JR., Presiding Judge.

¶ 1 Plaintiffs appeal dismissal of their causes of action in which they claim Archway Technology Partners, L.L.C. (Archway) and MF Global, Inc. (MFG) are liable for damages pursuant to 71 O.S.Supp.2004 § 1–509(G) as aiders and abetters of a fraudulent hedge fund investment scheme perpetrated by Mark S. Trimble (Trimble) and Phidippides Capital Management, L.L.C. (PCM). The trial court concluded defects in Plaintiffs' Second Amended Petition could not be remedied by further pleading and sustained MFG's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim Upon Which Relief Can be Granted and Archway's Motion to Dismiss premised upon preemption of jurisdiction by the federal commodities scheme, a failure to state a claim as a matter of law, failure to plead fraud with requisite specificity, improper venue based upon a forum selection clause,

and the failure of either specific, or general personal jurisdiction. After the dismissal, Plaintiffs' Motion for New Trial was denied. The trial court made the express findings necessary pursuant to 12 O.S.2001 § 994(A) to allow appellate consideration of this judgment.

¶ 2 We conclude Plaintiffs' causes of action against MFG based upon aiding and abetting fraudulent commodities transactions are pre-empted under federal law and no amendments to the pleadings may cure this defect. However, Plaintiffs' claims against Archway include a period of time when investments were within the scope of the Oklahoma Uniform Securities Act of 2004, 71 O.S.Supp.2004 § 1-101 et seq.(the Act). Plaintiffs' Second Amended Petition raises causes of action cognizable under the Act and raises facts both showing minimum contacts sufficient to allow an exercise of jurisdiction in conformity with due process and averring fraud with sufficient particularity. Consequently, we affirm the trial court's order in part, reverse it in part, and remand for further proceedings.

### STANDARD OF REVIEW

¶ 3 Review of a trial court's dismissal for failure to state a claim upon which relief may be granted involves a de novo consideration as to whether the petition is legally sufficient. *Indiana National Bank v. State of Oklahoma Department of Human Services*, 1994 OK 98, ¶ 2, 880 P.2d 371, 375. When a motion to dismiss includes evidentiary materials outside the pleadings, it is treated as one for summary judgment. 12 O.S.Supp.2004 § 2012(B).

¶ 4 When reviewing a motion to dismiss, the appellate court must take as true all of a challenged pleading's allegations together with all reasonable inferences which may be drawn from them. *Hayes v. Eateries, Inc.*, 1995 OK 108, ¶ 2, 905 P.2d 778, 780. "A pleading *must not* be dismissed for failure to state a legally cognizable claim *unless* the allegations indicate *beyond any doubt* that the litigant can prove no set of facts which would entitle him to relief." *Frazier v.*

*Bryan Memorial Hospital Authority*, 1989 OK 73, ¶ 13, 775 P.2d 281, 287. (Emphasis in original).

¶ 5 Motions to dismiss are generally viewed with disfavor, and to withstand a motion to dismiss it is not necessary for a plaintiff to either identify a specific theory of recovery or set out the correct remedy or relief which may apply. When the trial court is considering a motion to dismiss, the court "should **not** ask whether the petition points to an appropriate statute or legal theory, but whether relief is possible under any set of facts that could be established consistent with the allegations." *Indiana National Bank v. State Department of Human Services*, 1994 OK 98, ¶ 4, 880 P.2d 371, 375-6. (Emphasis in original, citations omitted.)

### THE PARTIES

¶ 6 Trimble, a resident of Oklahoma, is the manager of PCM and a member of the Chicago Mercantile Exchange, a designated market for trading commodity futures contracts. PCM is an Oklahoma limited liability company with offices in Oklahoma which allegedly held itself out as an exempt commodities pool operator. PCM is the general partner in Phidippides Capital LP, (PC) a Delaware limited partnership with offices in Oklahoma.

¶ 7 Plaintiffs are investors in a hedge fund begun by Trimble which was originally named Phidippides Fund LP (Fund). After he changed Fund's investment strategy from stocks to futures in December of 2008, Trimble, according to Plaintiffs, "configured a new limited partnership named Phidippides Capital LP." [1]

¶ 8 MFG is a Futures Commission Merchant which acted as a clearing broker for Trimble and PCM. MFG is a Delaware corporation with offices in Illinois and New York and no offices in Oklahoma. MFG provided clearing and execution services for accounts opened with it by Trimble and PCM. MFG

---

1. It does not appear that this limited partnership is named as a party in these proceedings. Plaintiffs claim they had no knowledge of this new entity until December of 2008, when Trimble sought their signatures for a Subscription Agreement to it. PCM was its general partner.

also provided Trimble and PCM with software which allowed them to execute trades.

¶ 9 Archway, an Indiana limited liability company formed in 2002, has one office in Indiana and another in New York. It sells a web-based software application named AT-Web which consists of a suite of accounting modules for investment professionals such as fund managers. It also offers outsourcing services during which Archway employees input data obtained from their fund manager customers into a Client Database, operate accounting modules, and perform other services, such as uploading mailing listing information provided by a fund manager so that investor information will appear on web-based statements.

## THE FACTS ALLEGED

¶ 10 Plaintiffs' Second Amended Petition states that Trimble and PCM maintained Fund was exempt from registration because its investors were either "accredited investors" or "qualified eligible persons,"[2] and neither Trimble nor PCM were registered as commodity pool operators or commodity trading advisors. Plaintiffs contend Trimble has never held any licenses which would allow him to solicit "sales of any security." Plaintiffs allege MFG, by serving as a Futures Commission Merchant, was bound to follow rules of the National Futures Association, it was obligated not to make trades for a person or entity required to be a licensed member but not so licensed, and it had a duty of due diligence to take reasonable steps to verify the licensing status of those for whom it made trades.

¶ 11 According to MFG, Trimble ran PCM, began the Phidippides hedge fund[3] (Fund) in 2004, and he received consideration for investment advice provided to its investors. In late December of 2004, Trimble opened a personal commodities account with MFG, and in October of 2007 PCM opened a commodities account with MFG.[4]

¶ 12 Plaintiffs' Second Amended Petition alleges that by at least October of 2007, Trimble and PCM began to issue false statements to Fund's investors and paid themselves more than $2,000,000 in fees based on false and inflated profit figures. Plaintiffs allege that Trimble and PCM obtained more than $34,000,000 from approximately sixty investors for investment in Fund.

¶ 13 According to Plaintiffs, in July of 2007, Trimble and PCM claimed a hardware failure necessitated a change in the periodic reports to investors. In April of 2008, Trimble altered the investment strategy of Fund from day trading in stocks to 100% commodities futures. Trimble and PCM moved Fund's accounts from other companies[5] to MFG after April of 2008. Between May of 2007 and January of 2008, i.e., prior to when Fund's accounts were moved to MFG, its investors allegedly sustained losses of $19,101,976.46 via Plaintiffs' purchases of pro rata shares in the Fund from Trimble and PCM.

¶ 14 In early 2007, Trimble contacted Archway about its ATWeb software applications. On October 15, 2007, Archway and PCM entered into a licensing agreement under which Archway provided hosted services consisting of installing and providing access to a PCM Client Database on its ATWeb software application. Archway and PCM entered into an "Operations Outsourcing" agreement on November 15, 2007, under which Archway personnel in its Indianapolis, Indiana office entered PCM monthly transaction data into the PCM Client Database hosted on the ATWeb site. PCM was to provide the data to build the database.

¶ 15 According to Archway, under the outsourcing agreement, the fund manager

2. These terms are defined at, respectively, 17 C.F.R. § 4.7 (2008) and 17 C.F.R. § 230.501(a)(1)-(3) and 17 C.F.R. § 230.501(a)(8) (2008).

3. Plaintiffs' Second Amended Petition alleges the Fund originated in 2003 and was first structured as a limited partnership named Phidippides Fund LP.

4. A third commodities account with MFG was opened by Phidippides Capitol LP in late August of 2008.

5. According to Plaintiffs, Fund's initial investments were in stocks and made primarily through Merlin Securities. That company is not named as a defendant.

controls and has the responsibility for: investor's access; what data is provided to investors; reviewing and approving the results; the accuracy of the data; and bookkeeping judgments. Archway claims it does not handle cash or securities trades, does not have contact directly with investors, does not provide the individual investors[6] in funds with services, and supplies technical support to fund managers, not individual investors.

¶ 16 Trimble provided Archway with historical and monthly Fund data for November of 2007 through the fourth quarter of 2008. Trimble's data included faxed MFG account statements which allegedly had been altered by him. Plaintiffs claim Archway could have verified this information like it did with bank statements, and Archway claims it had no way to retrieve MFG's information directly.

¶ 17 In late 2007, Trimble arranged access to the ATWeb online investor portal for Fund's investors. The investors then were able to use a password to login and access individual data reported on the site such as income, expenses, contributions, withdrawals, gains or losses, fees, and balances for their accounts. The investors could view, generate, and print out reports about their individual shares, but could not see overall funding or trading activity. In the fourth quarter of 2008, Trimble changed the data reporting intervals for the Fund investors from monthly to quarterly. Archway terminated all services to PCM and Trimble in January of 2009 after being notified by the F.B.I. that Trimble had provided Archway with false information.[7]

### APPELLATE ISSUES

¶ 18 Plaintiffs' causes of action against MFG and Archway are premised upon the statutory grounds stated in § 1–509(G). That statute imposes joint and several liability "to the same extent" as that of those who are liable under 71 O.S.Supp.2004 § 1–509(B) through (F) on anyone who materially aids "in the conduct giving rise to the liability." MFG and Archway both argue they did not materially aid in an unlawful sale of securities or provide investment advice. As a consequence, both allege, they did not meet the requirement that they "materially aid in the conduct giving rise to liability under subsections B through F." Further, they claim, Oklahoma courts do not have and should not exercise jurisdiction due to a lack of minimum contacts.

¶ 19 The questions presented for determination are whether: (1) Plaintiffs have a cause of action under the Act, (2) the Commodities Exchange Act, 7 U.S.C. § 1, et seq., preempts an exercise of jurisdiction, (3) if they have not done so, Plaintiffs may state a cause of action by amendment of their Second Amended Petition, (4) if minimum contacts exist, is an exercise of jurisdiction consistent with due process, and (5) Plaintiffs aver fraud with sufficient particularity?

### PREEMPTION

¶ 20 MFG and Archway claim preemption applies to Plaintiffs' causes of action against them. Plaintiffs argue federal preemption does not extend to their private causes of action but only extends to states' statutory measures embodying administrative agency regulatory functions which might conflict with the regulatory role of the CFTC. Plaintiffs argue MFG's processing of trades for Trimble and PCM facilitated their fraudulent scheme, as did Archway's posting on the

---

6. Whether Plaintiffs' merely are "investors" or, due to alleged "pro rata" purchases, they have some other legal status is not raised by any party and is unclear from the appellate record. For convenience only, we use the term "investor" for those with an interest in Fund.

7. Plaintiffs attached a complaint against Trimble, PCM and Phidippides Capital LP by the Commodities Futures Trading Commission (CFTC) in the United States Court for the Western District of Oklahoma as an exhibit to their opposition to MFG's motion. In that complaint, the CFTC alleges the named defendants, inter alia, issued false profit and loss statements when operating a commodities pool, redeemed pool participant interests based on falsely reported profits, and operated the pool as a Ponzi scheme. According to a February 3, 2009 e-mail to Trimble attached as an exhibit to Plaintiffs' response to Archway's motion to dismiss, Archway informed him it would no longer provide services to "Phidippides" on the advice of counsel and as indicated in a letter provided earlier that day.

ATWeb investor portal of information it had failed to verify because they relied upon that information when making further investment decisions.

¶ 21 In order to state a cause of action for aiding and abetting pursuant to § 1–509(G)(5), Plaintiffs must show that Trimble and PCM are liable pursuant to §§ 1–509(B)–(F) of the Act. Section 1–509(B) of the Act imposes liability upon one who "sells a security" in violation of 71 O.S.Supp.2004 § 1–301 [8] by means of an untrue statement of or omission to state a material fact. Similarly, 71 O.S.Supp.2004 § 1–509(C) imposes liability upon a buyer who makes an untrue statement of or omits to state a material fact. Liability is imposed pursuant to 71 O.S.Supp. 2004 § 1–509(D) upon "a broker-dealer or agent that sells or buys a security in violation of 71 O.S.Supp.2004 § 1–401(A), 71 O.S.Supp. 2004 § 1–402(A), or 71 O.S.Supp.2004 § 1–506.[9] One will be liable pursuant to 71 O.S.Supp.2004 § 1–509(E) if acting as an investment advisor or investment advisor representative in violation of § 1–506, 71 O.S.Supp.2004 § 1–403 or § 1–404.[10] Section 1–509(F) of the Act imposes liability upon "[a] person that received, directly or indirectly any consideration for providing investment advice to another" who employs a device, scheme, or artifice to defraud or who engages in a course of business which "operates or would operate as a fraud or deceit on another person."

¶ 22 Absent the establishment of prerequisite liability by a primary offender, no liability may attach for aiding and abetting under § 1–509(G). See Nikkel v. Stifel, Nicolaus & Co., Inc., 1975 OK 158, 542 P.2d 1305 (finding aiding and abetting liability would not lie under predecessor statute 71 O.S.1971 § 408 absent such primary liability). We therefore canvas the appellate record to see whether Plaintiffs state or may amend their Second Amended Petition so as to state a cause of action cognizable under the Act.

¶ 23 Plaintiffs need not obtain *judgment* in their favor against a primary wrongdoer in order to state a cause of action for aiding and abetting, but only must show the primary wrongdoer is "liable," *i.e.*, subject to suit for civil damages. *See South Western Oklahoma Development Authority v. Sullivan Engine Works*, 1996 OK 9, 910 P.2d 1052 (analyzing aiding and abetting liability set forth in predecessor statute 71 O.S.1991 § 408, finding prior reduction to judgment unnecessary, and holding material participants were jointly and severally liable with primary violator). We must conclude no such showing is possible here as to MFG under Plaintiffs' Second Amended Petition, nor is the defect correctable by further amendment.

¶ 24 Plaintiffs seek to impose on MFG the aider and abettor liability provided for by the Legislature in § 1–509(G)(5). "In determining whether a statute applies to a given set of facts, we focus on legislative intent which controls statutory interpretation." *Keating v. Edmondson*, 2001 OK 110, ¶ 8, 37 P.3d 882, 886. (Footnotes omitted.) Statutory intent generally is ascertained from the whole act, in light of its general purpose and objective. *Independent School Dist. No. I–20 of Muskogee County v. Oklahoma State Department of Education*, 2003 OK 18, ¶ 13, 65 P.3d 612, 617. (Footnote omitted.).

¶ 25 An analogous situation was examined in *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994), in which the Court noted Congress had the power to impose aiding and abetting liability

---

8. Section 1–301 makes it unlawful to offer or sell a security unless it is registered or exempt.

9. Section 1–401(A) makes it unlawful to transact business in the state as a broker-dealer unless the person is registered or exempt from registration under the Act, § 1–402(A), makes it unlawful to transact business in Oklahoma as an agent unless the person is registered or exempt from registration under the Act, and § 1–506 imposes liability

for misrepresentations concerning registration or exemptions for any person or security.

10. Section 1–403 makes it unlawful for a person to transact business in Oklahoma unless the person is registered or exempt from registration as an investment advisor, and § 1–404 makes it unlawful for an individual to transact business in Oklahoma unless the individual is registered under the Act or exempt from registration.

if it had chosen to do so but it had not done so, and finding no private right of action would be presumed to exist under Securities Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b) as it was then-enacted. "The issue is not whether it is good public policy to impose civil liability on aiders and abettors but whether aiding and abetting is covered by the statute." 511 U.S. at 177, 114 S.Ct. at 1448.[11]

¶ 26 The transaction forming the basis for applying § 1–508(G) necessarily must involve a security transaction within the ambit of the Act.[12] As a prerequisite for the liability of an aider or abettor, the one who allegedly is aided or abetted must be liable under one of the *specified* statutory grounds stated in the Act.

█ ¶ 27 MFG argues it has no liability because Oklahoma's Act derives from the Uniform Securities Act from the National Conference of Commissioners on Uniform State Laws, Comment 11 of which provides: "Under 509(g)(4), the performance by a clearing broker of the clearing broker's contractual functions—even though necessary to the processing of a transaction—without more would not constitute material aid or result in liability under this section. *See also Ross v. Bolton*, 904 F.2d 819 (2nd Cir.

1990)."[13] Under our standard of review, we must take as true Plaintiffs' allegations MFG had knowledge of additional facts and circumstances which would render this comment inapplicable. Nevertheless, we must conclude the Act does not apply to Plaintiffs' causes of action against MFG because those claims are based upon commodities transactions which are pre-empted.

¶ 28 At first blush it might appear a cause of action might be pursued in the Oklahoma courts based upon the violation of federal commodities laws, especially given Congress's provision, when defining the jurisdiction of the Commodities Futures Trading Commission, that "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State," 7 U.S.C. § 2(a)(1)(A)(II), and how, in 7 U.S.C. § 13c(a), Congress provides that one who commits or who willfully aids or abets a violation of the Commodity Exchange Act or who violates any "rules, regulations, or orders issued pursuant to this chapter ... may be held responsible for such violation as a principal." Indeed, after somewhat confusing and conflicting interpretations of prior commodities law finding an *implied* private right of action,[14] Congress *explicitly* provided for a private right of action, and included

---

11. In the framing of their arguments, Plaintiffs tend to ignore that the Act's stated purpose and scope is the regulation of securities, not an enactment of general aiding and abetting liability. To adopt the broad construction proposed by Plaintiffs would potentially convert a statute targeting securities transactions into one applying to all manner of frauds and misrepresentations which do not involve such transactions. This we will not do.

12. Comments by the National Conference of Commissioners on Uniform State Laws note that Oklahoma's Uniform Securities Act varies by its addition of subsection (g)(5) to the Uniform Act's version of § 509. Our conclusion only securities, not commodities, are the focus of the Act is buttressed by the Legislature's declaration in 71 O.S.Supp.2004 § 1–509(A), that "[e]nforcement of civil liability under this section is subject to the Securities Litigation Uniform Standards Act of 1998," Pub.L. 105–353, (see 15 U.S.C. § 78a), in which Congress addressed how national standards were necessary because, although state securities regulation continued in importance, since the Private Securities Litigation Reform Act of 1995 a shift in the number of securities class

action lawsuits, especially those alleging fraud, from federal to state courts had prevented that act from fully achieving its objectives.

13. In *Ross*, the Court dismissed a complaint, finding a clearing agent had no liability as an aider and abettor of a stock scheme because the clearing agent had no fiduciary duty to the investor and, in the absence of that duty, the investor had failed to meet heightened *scienter* requirements. The clearing agent's actions were deemed simply those of an innocent clearing agent conducting ordinary business.

14. With the amendments effective January 11, 1983, Congress removed language from § 13c(a) which provided persons violating its provisions "may be held responsible *in administrative proceedings* under this Act for such violation as a principal." (Emphasis added.) Prior to that amendment, some courts rejected recognition of an implied private judicial right of action for aiding and abetting pursuant to 7 U.S.C. § 13c(a) or under anti-fraud provisions set forth in 7 U.S.C. §§ 4 b and 4o, finding only administrative procedures were available. e.g., *Johnson v. Chilcott*, 590 F.Supp. 204 (D.Colo.1984).

liability for anyone who "wilfully" aids or abets a violation which causes damages to a person with "an interest or participation in a commodity pool"[15] in 7 U.S.C. § 25(a)(1)(C)(iii), which became effective on or after the date of enactment of the Futures Trading Act of 1982, *i.e.* January 1, 1983. 7 U.S.C. § 25(d).

■ ¶ 29 However, *in that same enactment,* Congress also explicitly placed *"exclusive* jurisdiction of actions brought under [that] section" in "[t]he United States district courts." 7 U.S.C. § 25(c). (Emphasis added.) State courts "have inherent authority to adjudicate claims arising under the laws of the United States, *unless* Congress affirmatively assigns exclusive jurisdiction over a federal claim to the federal courts." *Reeds v. Walker,* 2006 OK 43, ¶ 11, 157 P.3d 100, 107. (Footnotes omitted, emphasis added.) Congress has spoken. Once Fund's investments were solely in commodities futures, any state court jurisdiction was pre-empted.

¶ 30 For this reason, the implied private right of action recognized in decisions such as *W & W Farms, Inc. v. Chartered Systems Corporation of New York, Ltd.,* 542 F.Supp. 56 (N.D.Ind.1982), *Witzel v. Chartered Systems Corporation of New York, Ltd.,* 490 F.Supp. 343 (D.Minn.1980), and *R.J. Hereley & Son Company v. Stotler & Company,* 466 F.Supp. 345 (N.D.Ill.1979), which look to § 2(a)(1)(A)(II) and interpret the law under prior legislation,[16] offer no basis for reversal here. Plaintiffs' Second Amended Petition, despite appearing to raise factual issues which would satisfy a cause of action under the federal scheme, may not be pursued in

Oklahoma's state courts due to the explicit federal preemption of jurisdiction.

■ ¶ 31 As to Archway, a different conclusion is required as to jurisdiction and possible liability. Plaintiffs' Second Amended Petition recites that Trimble began soliciting funds in 2004 for investments in securities which would be subject to the Act, he began accepting funds on behalf of PCM in 2005, and he and PCM issued false statements in violation of the Act beginning in at least October of 2007. Plaintiffs also allege Trimble was never licensed to sell securities and that he and PCM were selling unregistered securities in violation of the Act. Plaintiffs further allege Trimble operated Fund using the services of Merlin Securities and that stocks, *i.e.* securities subject to the Act, were the major portion of the investments at that earlier time. Consequently, it appears Plaintiffs state facts consistent with liability on the part of Trimble and PCM under the Act.

■ ¶ 32 Archway argues it merely recorded information provided by Trimble and PCM and made it available. Under § 1–509(G)(5), Archway must meet "the burden of proof that [it] did not know and, in the exercise of reasonable care could not have known, of the existence of the conduct by reason of which liability is alleged to exist." Plaintiffs produced e-mail communications,[17] dated prior to when Fund's investments were restricted to commodities, raising facts about which reasonable minds could differ whether Archway exceeded the highly restricted role it claims to have undertaken when performing accounting services. Further, the question whether aid is "material" presents a

---

15. A pool is defined as "any investment trust, syndicate or similar form of enterprise operated for the purpose of trading commodity interests." 17 C.F.R. § 4.10(d)(1).

16. In *Merrill, Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982), the United States Supreme Court found the 1974 amendments, including the addition by Congress of the savings clause in § 2(a) to the exclusive jurisdiction provisions separating the functions of the Securities and Exchange Commission and the Commodity Futures Trading Commission, indicated an intent to preserve the previously recognized implied private right of action as a remedy under the Commodities Ex-

change Act. However the later amendments creating an explicit private right of action obviate the need to construe such a implied right of action under § 2(a).

17. For example, a January, 2008 e-mail stream of communication between Trimble and an employee identified as an executive vice president at Archway notes Trimble's commingling of "personal money" in investors' accounts, how there is a need to "clean this up" under accounting rules, and advises Trimble could move the money into a Miscellaneous Assets account where it could stay "forever," but also warns he "would be short $1,500,000 of 'fund' cash to pay out your investors" if Fund were liquidated.

factual determination which is dependent upon the development of evidence and which is not amenable to determination in a summary fashion on a motion to dismiss. *See Hirata Corporation v. J.B. Oxford and Company,* 193 F.R.D. 589 (S.D. Indiana 2000) (addressing whether a petition was subject to dismissal upon a motion and applying an Indiana securities statute regarding the question of material aid by a clearing broker).

¶ 33 Plaintiffs' Second Amended Petition claims they suffered financial losses between May of 2007 and January of 2008 as a result of being induced to invest or re-invest in *pro rata* shares in the Fund based upon false information provided via the ATWeb site by primary actors Trimble and PCM. According to Plaintiffs, during this time Fund was structured as a limited partnership and its investments involved day trading in a stock portfolio. Consequently and without a need for amendment, Plaintiffs stated claims for secondary liability due to aiding and abetting against Archway based upon securities transactions [18] subject to the Act. Dismissal of Archway based upon federal preemption is reversed.

## MINIMUM CONTACTS

¶ 34 Archway argues it is a non-resident without sufficient minimum contacts in Oklahoma and Plaintiffs fail to meet their burden to support an exercise of jurisdiction. Archway claims it merely agreed to provide hosting services which would be performed in Indiana, Trimble was to provide accurate MFG information to be posted, it had no independent ability to secure the MFG information to be posted, it was not directly involved with Fund's investors, and its client was Fund, not the investors. Archway claims it has no licenses, property, employees, offices, bank accounts, agents or telephone numbers in Oklahoma, does not pay taxes there and its employees have not visited its three customers there. Archway argues it had no reasonable expectation of exposure to lawsuits in other places than Indiana. In addition to a lack of general jurisdiction, Archway claims its activities were not purposeful availment so as to invoke specific jurisdiction.

¶ 35 Under Oklahoma's long-arm statute, "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." 12 O.S.Supp.2002 § 2004(F). This jurisdiction may be exercised "to the outer limits permitted by the Oklahoma Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution," which limits "have been established by the United States Supreme Court." *Conoco, Inc. v. Agrico Chemical Company,* 2004 OK 83, ¶ 17, 115 P.3d 829, 834.

¶ 36 Jurisdiction may be either general or specific. A court is permitted to exercise general jurisdiction over a non-resident defendant if that defendant has engaged in systemic and continuous activities, *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), which are so substantial and of such a nature as to justify suit on causes of action arising from or related to dealings distinct from those activities. *International Shoe Co. v. Washington,* 326 U.S. 310, 318, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945).[19] Specific juris-

18. In so determining, we address only the legal sufficiency of Plaintiffs' Second Amended Petition as to the Act, not the merits of Plaintiffs' allegations of aiding and abetting, which are fact dependent.

19. "[T]o establish general jurisdiction, the defendant must be conducting substantial and continuous local activity within the forum state." *Smith v. Basin Park Hotel, Inc.,* 178 F.Supp.2d 1225 (N.D.Okla.2001). In *Smith,* the Court applied the 12 factors identified by the Tenth Circuit in *Soma Medical International v. Standard Chartered Bank,* 196 F.3d 1292 (10th Cir.1999) when analyzing general jurisdiction. Those factors include whether, within that state, the defendant: (1) engages in business; (2) is licensed to do business; (3) owns, leases, or controls real or personal property or assets; (4) maintains employees, offices, agents, or bank accounts; (5) is present in through shareholders residing there; (6) maintains phone or fax listings; (7) advertises or solicits business; (8) has salespersons traveling to it; (9) pays taxes; (10) visits potential customers; (11) recruits employees; and (12) generates a substantial percentage of its national sales through revenue generated from in-state customers. Archway cites several of these fac-

diction is exercised when a defendant has certain minimum contacts with a forum; whether such jurisdiction exists presents a question of law. *Willbros USA, Inc. v. Certain Underwriters at Lloyds of London,* 2009 OK CIV APP 90, 220 P.3d 1166.

¶ 37 As *Zippo Manufacturing Company v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997) suggests, under a minimum contact inquiry for specific jurisdiction, the focus is on the quality of activity over the Internet, and as *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), teaches, changes in modern commercial life have obviated the need for physical presence within a state to establish minimum contacts for personal jurisdiction. *Accord, Barrett v. Catacombs Press,* 44 F.Supp.2d 717 (E.D.Pa.1999).

¶ 38 The law when jurisdiction is based upon internet activity is evolving. A sliding scale framework is proposed in *Zippo* for minimum contacts analysis when internet activity is at issue. At one end of the scale is a passive website on which a defendant has posted information which is accessible by persons in foreign jurisdictions, and at the other end of this scale are defendants who clearly do business through a commercial website. When a user is able to exchange information with a website, the middle of the scale, the exercise of jurisdiction is determined after examining the level of interactivity and commercial nature of the exchange of information.

¶ 39 However, after discussing *Zippo*'s sliding scale analysis, another panel of this Court recognized, in *Lively v. IJAM, Inc.,* 2005 OK CIV APP 29, 114 P.3d 487, that a more traditional jurisdiction analysis also may be applied because any underlying transactions using the internet are the result of actions in the physical world. "What is clear from a review of the case law is that the key to analyzing the personal jurisdiction in internet-related cases is to look at the nature

and quality of the defendant's internet activity." *Id.* ¶ 34, at 496.

¶ 40 As suggested in *Lively,* we conclude it is also appropriate to analogize to the issue of contacts under a traditional analysis based upon mail or telephone contacts. Here, Plaintiffs allege they own pro rata shares in Fund, and Archway's numerous commercial interactions with Trimble and PCM in their operation of Fund form the basis for Plaintiffs' claims for Archway's secondary liability for aiding and abetting. Unlike purely passive sites with advertisements or information viewable by anyone accessing the internet, the information posted on Archway's ATWeb site was specifically designed to be accessible *only* through the use of a password system by Fund's investors. Its activities were specifically and purposefully directed at Fund and its investors. Plaintiffs' alleged damages allegedly arise out of or relate to those activities, and it created continuing relationships and obligations. *See Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 472–473, 105 S.Ct., 2174, 2182–3, 85 L.Ed.2d 528.

¶ 41 We also find instructive *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 638 N.E.2d 541 (1994), in which Florida accountants contracted to provide financial statements and information to a group whose plurality resided in Ohio, making it not patent and unambiguous that the Ohio court lacked *in personam* jurisdiction over them. The accountants contended they owed a duty to certain partnerships but not the individual limited partners. The Ohio Court found where a general partner owes a fiduciary duty to the limited partners, a professional relationship with the general partner extended to those in privity with the general partner, *i.e.,* the limited partners.[20] Even though Ohio's long-arm jurisdiction statute did not, as Oklahoma's does, extend to the *full* limits of due process, the Ohio court concluded it had jurisdiction over the non-resident, Florida accountants.[21]

tors, but general jurisdiction is not the only potential basis for jurisdiction.

20. As noted *supra,* nt. 7, Plaintiffs' legal status due to their purchases of *pro rata* shares in Fund is unclear from the appellate record.

21. The Ohio Court ultimately concluded dismissal was appropriate because conflicting statements of fact had been resolved by the trial court and the relief requested, a writ of prohibition, was neither warranted nor a proper remedy.

**862**

¶ 42 We are not persuaded Archway's argument it lacks minimum contacts for an exercise of jurisdiction because of the nature of its contacts with the *individual* Plaintiffs answers the question of jurisdiction. Plaintiffs' aiding and abetting cause of action against Archway is based upon alleged material aid rendered to Trimble and PCM. Plaintiffs are "investors" with *pro rata* shares in Fund, Archway's contracts were with Fund, and both Trimble and PCM operated Fund. To require a direct interaction with each individual plaintiff would convert an aider and abettor into a primary actor and render meaningless and surplusage the provisions of § 1–509(G)(5). It is the aiding and abetting of the primary actors which creates liability under § 1–509(G)(5). Minimum contacts looks to the activities of the parties within a forum and whether constitutional due process is satisfied by an exercise of jurisdiction. Archway's activities, including the limited, targeted, password protected access to AT-Web provided to Plaintiffs as Fund's investors, were purposeful and provided minimum contacts with the Fund, its owners, and the primary actors within the *forum* Oklahoma.

*FORUM SELECTION*

¶ 43 Archway argues its agreement with Trimble and PCM contains a forum selection clause, Plaintiffs are third-party beneficiaries of the agreement, Plaintiffs' claims arise out of breaches of the agreement, and Plaintiffs' lack of an allegation of breach of contract, despite that "the alleged failure to verify stems from a duty purported to arise in the contract," does not pose a barrier to enforcement of the forum selection clause.

 ¶ 44 "Ordinarily, absent compelling reasons otherwise, forum selection claus-

es are enforceable." *State ex rel. Fisher v. South Atlantic Dredging Co., Inc.*, 2000 OK CIV APP 123, ¶ 7, 15 P.3d 523, 525 (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991)). However, private individuals may not oust [22] a state of jurisdiction over a controversy which is properly presented and in which forum they have the constitutionally required minimum contacts. *Id.* A standard of "unfair or unreasonable" may be applied to invalidate forum selection clauses which the parties have not negotiated or discussed such a clause, or there is an absence of meaningful choice. *Eads v. Woodmen of the World Life Insurance Society*, 1989 OK CIV APP 19, ¶ 13, 785 P.2d 328, 331. The party seeking to avoid such a clause has the burden to show its enforcement is unreasonable under the circumstances. *Adams v. Bay, Ltd.*, 2002 OK CIV APP 117, 60 P.3d 509.

 ¶ 45 Here, the trial court concluded dismissal was warranted solely because no cause of action could be stated by further amendment of Plaintiffs' Second Amended Petition. We have determined otherwise, and the validity of the forum selection clause under the circumstances of this controversy requires the determination of fact questions.[23] It is not the function of the appellate courts to make first-instance determinations of fact which were properly presented to the trial court but left unresolved. *King v. King*, 2005 OK 4, 107 P.3d 570. The issue whether the forum selection clause comports with constitutional standards and public policy is one for determination by the trial court upon remand.

---

22. Courts also possess the discretion to decline, by applying *forum non conveniens*, to exercise jurisdiction and thereby give effect to the parties' agreement regarding forum selection. *Crowson v. Sealaska Corporation*, 705 P.2d 905 (Alaska 1985); *see also, M/S Bremen v. Zapata Off–Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513.

23. Nothing in the record adduced to date indicates Plaintiffs were either involved in negotiation or that they were signatories to the Archway–Fund agreement. Their contacts with the

ATWeb site appear to be via their receipt of information sent on behalf of Fund (of which Plaintiffs owned *pro rata* shares), and no prior "fair warning" of the forum selection provisions to Plaintiffs appears in the evidence adduced to date. Whether they consented to the forum selection clause, otherwise possess the constitutionally required minimum contacts with Indiana, or it is fair to apply the forum selection clause in the context of an aiding and abetting cause of action requires first-instance factual determinations for the trial court.

## FRAUD

■ ¶ 46 Archway argues Plaintiffs have failed to plead fraud with sufficient particularity. We disagree.

■ ¶ 47 The elements of actionable common law fraud are the making of a false material misrepresentation which is made as a positive assertion, is either known to be false or made recklessly without knowledge of the truth, is made with an intention it be acted upon, and which is relied on to the other party's detriment. *Bowman v. Presley*, 2009 OK 48, ¶ 13, 212 P.3d 1210, 1218. These elements must be pled in accordance with 12 O.S.2001 § 2009(B), that is, the "circumstances constituting fraud ... shall be stated with particularity." As instructed by *Gay v. Akin*, 1988, OK 150, ¶ 8, 766 P.2d 985, 990:

> In construing the Oklahoma Pleading Code's provisions which govern fraud allegations, and in determining the detail necessary to satisfy the "particularity" requirement, we are obliged to look to the Federal Rules of Civil Procedure—the progenitor of our pleading code. Since the text of Federal Rule 9(b) is incorporated verbatim in the Oklahoma pleading code, federal and state jurisprudence is instructive. We note initially that the particularity requirement extends to all averments of fraud, regardless of the theory of legal duty—statutory, tort, contract or fiduciary. To satisfy the requirements of § 2009(B), it is unnecessary to plead each element of fraud in detail if the circumstances constituting fraud are stated with particularity. (Footnotes omitted.)

The specificity required is only so much as will apprise a defendant of the conduct complained of so the opposing party may prepare responsive pleadings and defenses. *Id.* ¶ 18, at 993; *see also First Federal Savings & Loan Association of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 634 F.Supp. 1341 (S.D.N.Y.1986)(analyzing particularity of third-party claim alleging aiding and abetting of securities fraud). However, § 2009(B) also provides "knowledge and other condi-

tions of mind of a person may be averred generally."

¶ 48 Trimble and PCM are alleged to have made false and inflated representations about the Fund's assets and its profitability, both historically and in more recent times, which representations were relied upon to Plaintiffs' detriment, causing them damages of some $19,101,976.46 between May of 2007 and January of 2008. Plaintiffs also allege PCM and Trimble failed to disclose the information about the methods used to make trades and in whose names trades were made, how funds were co-mingled, and how registrations required by law for Trimble and PCM and for certain securities were not obtained. Plaintiffs claim all these actions caused Trimble and PCM to violate the Act, and Archway is alleged to have materially aided this fraud by the provision of fraudulent account information which was intended to and was relied upon by Plaintiffs and by failing to verify information. Plaintiffs allege they received false information every time they logged on to the ATWeb site. The fraud of Trimble and PCM [24] are stated with enough specificity to allow Archway to determine the factual basis for the aiding and abetting claim based upon fraud by Trimble and PCM.

## CONCLUSION

¶ 49 Transactions prior to when Fund's investments were solely in commodities futures were within the ambit of the Act. However, Plaintiffs' claims against MFG arise solely from commodities transactions for Fund. As to those transactions, the Act is inapplicable and Congress has placed jurisdiction over private rights of actions claiming violations of the federal commodities regulations, including fraudulent activities, solely within the federal district courts. We must conclude Plaintiffs' causes of action premised on commodities transactions are pre-empted, further amendment of their Second Amended Petition will not cure this jurisdictional defect, and MFG was entitled to dismissal as a matter of law. Plaintiffs' Second Amended Petition sufficiently states a cause of action against Archway premised upon aiding and

---

**24.** When analyzing whether fraud is stated with sufficient specificity, it is important to remember that Archway's liability is not based on primary liability but instead upon materially aiding and abetting conduct giving rise to secondary liability under subsections B through F of § 1–509.

abetting violations of the Act by Trimble and PCM *via* allegedly fraudulent activity in the operation of Fund. Dismissal of such claims is reversed and the case is remanded for further proceedings.

¶50 What, if any, duties may be owed based upon providing accounting and other services, whether Archway "materially" aided in conduct giving rise to liability, and whether in the exercise of reasonable care it could not have known of conduct giving rise to liability are dependent upon first-instance factual determinations for the trial court's consideration upon remand, not by this Court at this stage of the proceedings. The judgment dismissing Plaintiffs' Second Amended Petition is **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED** for further proceedings consistent with this opinion.

BELL, C.J., and HANSEN, J., concur.